### In re COASTLINE CARE, INC., Debtor.

### No. 01–09381–8–JRL.

United States Bankruptcy Court,
E.D. North Carolina,
Wilson Division.

Sept. 24, 2003.

---

Trwick H. Stubbs, New Bern, NC, for debtor.

---

## ORDER

J. RICH LEONARD, Chief Judge.

This confirmed chapter 11 case is before the court on the debtor's motion to reopen, which is opposed by EMS Management and Consultants, Inc. ("EMS"). A hearing was held on July 23, 2003 in Wilson, North Carolina.

## I. *Facts*

The debtor is in the business of providing convalescent ambulance service to seven counties in eastern North Carolina and provides backup EMS service to two of these counties. The debtor filed chapter 11 on December 5, 2001, and a chapter 11 plan of reorganization was confirmed on June 12, 2002. The Order Confirming Plan estimated the total amount of unsecured debt owed by the debtor at $1,277,998 and provides for payments to this class totaling $61,400 payable in five annual installments of $12,280. The treatment of the unsecured class further proposes that the debtor will investigate and pursue avoidance actions under §§ 547 and 548 of the Bankruptcy Code and provides that any funds collected from these actions will be distributed in accordance with priorities established in the Code. The plan makes no mention of other potential causes of action.

On November 1, 2002, the debtor applied for a final decree, representing that all property proposed by the plan to be sold had been sold, distributions had commenced under the plan, and that the debtor had succeeded to the management of all property dealt with by the plan. Based on these representations, the court entered a final decree on November 9, 2002, finding that the plan had been substantially consummated and closing the case. On June 12, 2003, the debtor filed this motion to reopen, asking the court to determine whether two lawsuits filed post-confirmation are assets of the estate and, if so, to determine the proper method of their administration. It is undisputed that neither lawsuit was disclosed as an asset of the estate in the debtor's schedules, statements, disclosure statement, or plan of reorganization.

### A. The Class Action

On June 24, 2002, only twelve days after the confirmation of its plan, the debtor was added as a plaintiff in an action filed against the United States of America, the Department of Health and Human Services ("DHHS"), Tommy Thompson in his official capacity as Secretary/Director of DHHS, the Health Care Financing Administration (Centers for Medicare & Medicaid Services) ("HCFA/CMMS"), and Thomas A. Scully in his official capacity as Secretary/Director of HCFA/CMMS. This action is pending in the United States District Court for the Eastern District of North Carolina and seeks injunctive relief based upon the failure of the defendants to implement a fee schedule for ambulance services in a timely manner as required by federal law.

A companion case was filed in the United States District Court for the Middle District of Georgia against the same defendants. On January 16, 2003, an order was entered in the Georgia case granting partial summary judgment in favor of the Georgia plaintiffs. As a result of this ruling, the debtor has been informed by counsel that it will recover an unknown amount of damages, possibly within the next ninety days. According to the motion to reopen, the debtor "was uncertain of the likelihood or amount of any recovery, and overlooked these possible assets of the Estate until recently when the Order was entered in the Georgia Action."

### B. The Lawsuit Against EMS

On September 5, 2002, the debtor filed a lawsuit in the Superior Court of Duplin County, North Carolina against EMS. The debtor contends that this lawsuit is based on information that it did not obtain until June 25, 2002, approximately two weeks after the confirmation of its plan of reorganization. The debtor's chronology is disputed by EMS, which asserts that the debtor was well-aware that it possessed causes of action against EMS and DHHS long before the confirmation of its plan.

EMS has raised the defense of judicial estoppel in the Superior Court action, arguing that the debtor's failure to disclose the cause of action in its plan of reorganization estops it from suing on that cause of action after the plan has been confirmed. *See, e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.,* 989 F.2d 570 (1st Cir.1993); *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257 (7th Cir.1997). EMS opposes the debtor's motion to reopen, contending that the debtor has filed this motion only to counter the defense of judicial estoppel and prevent dismissal of the Superior Court action.

### II. Discussion

The debtor's motion to reopen was filed after the substantial consummation of its confirmed chapter 11 plan of reorganization. The timing of this motion raises difficult questions about the nature of a confirmed chapter 11 plan and the extent of this court's post-confirmation jurisdiction. After close analysis of these issues, the court concludes that the debtor's motion must be denied because the court no longer has the ability to modify or revoke the debtor's confirmed plan of reorganization.

### A. Section 350(b): Reopening a Closed Case

■ Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Bankruptcy Rules add that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr.P. 5010. Rule 5010 imposes

no time limitation on a motion to reopen and Rule 9024 specifically exempts motions to reopen bankruptcy cases from the one year limitation generally imposed by Rule 60(b) of the Federal Rules of Civil Procedure. Thus, a motion to reopen can be filed at any time.

The Fourth Circuit Court of Appeals has held that the decision to reopen a case is committed to the "sound discretion" of the bankruptcy court and must depend "upon the circumstances of the case." *In re Thompson,* 16 F.3d 576, 581 (4th Cir. 1994); *see also Hawkins v. Landmark Finance Co.,* 727 F.2d 324 (4th Cir.1984). The reopening of a case is a ministerial act that has no substantive effect in itself. *Cusano v. Klein,* 264 F.3d 936 (9th Cir.2001). It follows that there is no reason to grant a motion to reopen if substantive relief cannot be granted independently in the reopened case.

The debtor's chapter 11 plan was confirmed on June 12, 2002. Less than a month later, the debtor was a plaintiff in two separate lawsuits, advancing claims that appear to have existed pre-petition. The debtor's petition, schedules and statements, disclosure statement, and plan did not mention these claims and creditors were given no notice of their existence. Exactly one year after confirmation, and more than seven months after substantial consummation of the plan, the debtor filed a motion to reopen the case to permit the administration of these assets. This motion should be granted if it is still possible to grant substantive relief in the case by administering these assets for the benefit of the debtor's creditors, but should be denied if it is not.

B. *The Status of the Omitted Causes of Action*

Under all chapters of the Bankruptcy Code, property of the estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate encompasses property that is not scheduled or otherwise disclosed by the debtor. Under § 554(c), "any property scheduled under § 521(1)" that has not been administered when the case is closed is abandoned to the debtor. Section 554(d) adds that "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). It follows that property of the estate that was concealed or unknown, and thus not scheduled, remains property of the estate after the case is closed.

It is difficult to imagine a situation in which a chapter 7 case, which involves the trustee's liquidation and distribution of property of the estate, would not be reopened to permit the administration of newly discovered property of the estate. *See, e.g., In re Suplinskas,* 252 B.R. 293 (Bankr.D.Conn.2000); *Tavormina v. Harris (In re Harris),* 32 B.R. 125 (Bankr. S.D.Fla.1983).

Chapter 11, on the other hand, is typically used for complex reorganizations and thus effectuates different policies than chapters 7 and 13. As a result, certain aspects of the bankruptcy process work very differently in chapter 11 than in other chapters. *Cf. In re Regional Building Systems, Inc.,* 254 F.3d 528 (4th Cir.2001) (holding that the confirmation of a chapter 11 plan can extinguish a creditor's lien, although a chapter 13 plan cannot have this effect). The Bankruptcy Code follows this pattern by treating concealed and newly discovered assets differently in chapter 11 than in chapters 7 and 13.

The disposition of property in a confirmed chapter 11 case is controlled by § 1141(b), which provides that "the confir-

mation of a plan vests all of the property of the estate in the debtor" unless the plan or confirmation order provides otherwise. 11 U.S.C. § 1141(b). The phrase "property of the estate" used in § 1141(b) incorporates a broader range of property than the phrase "property scheduled" used in § 554(c). As a result, § 1141(b) adds a gloss to §§ 554(c) and (d) in a confirmed chapter 11 case, vesting property of the estate in the post-confirmation debtor even if that property was not included in the debtor's schedules.

■ Property of the estate includes causes of action that the debtor could have asserted on the petition date. *See, e.g., Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487 (3d Cir.1997); *Sender v. Buchanan (In re Hedged–Investments Assocs., Inc.),* 84 F.3d 1281 (10th Cir.1996); *Bickford v. Ponce de Leon Care Center,* 918 F.Supp. 377 (M.D.Fla.1996). This is true even if those causes of action were omitted from the debtor's petition, schedules and statements, and plan of reorganization. *See Goodman v. Phillip R. Curtis Enters., Inc.,* 809 F.2d 228 (4th Cir.1987).

In the present case, the omitted causes of action, even though not disclosed in the debtor's schedules or included in the plan, were property of the estate that vested in the debtor immediately upon confirmation of the debtor's plan. In effect, the debtor's motion to reopen asks the court to cure its omission of these assets from the plan by transmuting them back into property of the estate so that they may be distributed to creditors. Whether or not this may be accomplished depends on the extent of the court's post-confirmation jurisdiction.

C. *Post–Confirmation Jurisdiction over the Omitted Causes of Action*

■ A confirmed chapter 11 plan of reorganization operates as a final judg-

ment with res judicata effect. *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.),* 81 F.3d 1310 (4th Cir.1996), *citing Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). A confirmed plan is binding on the debtor and all creditors, whether or not they have accepted the plan. 11 U.S.C. § 1141(a). These rules express the fundamental principle that a confirmed plan should, insofar as possible, be a final determination of the rights of all parties. In accordance with this principle, a bankruptcy court's post-confirmation jurisdiction is limited to specific areas circumscribed by the language of the plan and by § 1142(b) of the Bankruptcy Code.

■ Section 1142(b) provides that "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, *that is necessary for the consummation of the plan.*" 11 U.S.C. § 1142(b) (emphasis added). Section 1142(b) "limits the authority of the court to matters concerning the implementation or execution of a confirmed plan," with the goal of achieving substantial consummation of the plan's provisions. *Goodman v. Phillip R. Curtis Enters., Inc.,* 809 F.2d 228, 232.

Turning to the debtor's plan of reorganization, Paragraph X of the plan specifically retains bankruptcy jurisdiction in the following pertinent areas:

4. to determine all controversies and disputes arising under or in connection with the plan;

5. to determine all applications, adversary proceedings and litigated matters pending on the confirmation date; ... [and]

8. to determine all disputes regarding property of the estate . . . .

Subsections 4 and 5 contemplate the court's involvement in matters that are either treated in the plan, connected to the plan, or pending on the confirmation date. The omitted causes of action fall into none of these categories. They were, however, property of the estate and disputes over their administration arguably fall within the court's retained power under Paragraph X(8) of the plan. Nevertheless, the plan does not mention these assets and provides no treatment for them.

Given this, the question becomes procedural: how does the court supply a treatment for the administration of property when neither the property or its treatment are contemplated by a confirmed plan? Two possible solutions are provided by the Bankruptcy Code. First, the confirmed plan may be modified under § 1127(b) to provide for the administration of the omitted assets. Second, the existing order of confirmation may be revoked under § 1144 and new procedures put in place.

 1127(b) provides that the proponent of a plan or the reorganized debtor may modify a confirmed plan of reorganization "at any time after confirmation" and "before substantial consummation" of the plan. 11 U.S.C. § 1127(b). Thus, a plan of reorganization may be modified until it has been substantially consummated, but not thereafter. In *Goodman v. Phillip R. Curtis Enters., Inc., supra,* the Fourth Circuit remanded a bankruptcy case with instructions that the parties consider modifying a confirmed plan to include a tort claim that was not mentioned in the plan. One key to the *Goodman* decision was the court's finding that it was an open question whether the plan had been substantially consummated. The present case is distinguishable from *Goodman* because a final decree finding

the plan substantially consummated was entered on November 9, 2002. Thus, the plain language of § 1127(b) bars the modification of the debtor's substantially consummated plan of reorganization.

Nor is revocation of the plan under § 1144 an option for the debtor. Section 1144 provides that an order of confirmation may be revoked "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation . . . if and only if such order was procured by fraud." Neither the debtor or any creditor has moved for relief under this section and, in any event, relief under this section is not warranted on the facts of this case because the debtor's motion to reopen was filed more than 180 days after entry of the confirmation order.

**[15]** 180 day period of § 1144 is strictly construed and has been held to apply even if fraud is not uncovered until after the period expires. *See 680 Fifth Ave. Assocs. v. EGI Co. Servs., Inc. (In re 680 Fifth Ave. Assocs.),* 209 B.R. 314 (Bankr.S.D.N.Y.1997); *Clarke v. Mission Heights Investors, Inc. (In re Mission Heights Investors, Limited Partnership),* 202 B.R. 131 (Bankr.D.Ariz.1996). Injured parties are not left without a remedy, however, since they are free to pursue an independent action for damages against the wrongdoers. Section 1144 simply has the effect of ending the bankruptcy court's involvement in the case.

**[16]** on this analysis, the court concludes that it does not have the ability to modify or revoke the debtor's plan of reorganization. Accordingly, even if the debtor tenders the omitted assets to the court, the bankruptcy process offers no means to make these assets available for administration. This does not mean that the debtor will benefit from the omission

of these assets. As argued by EMS, the debtor's failure to include these causes of action in its plan may mean that it is judicially estopped from advancing those causes of action in other fora post-confirmation. But this is an issue to be decided by the courts in which these actions are pending.

### III. *Conclusion*

Based upon the foregoing, the debtor's motion to reopen this case to permit the administration of causes of action omitted from its plan is denied.

**So Ordered.**