SHEPHERD, J.
In this appeal, James P. Driscoll challenges a final order on proceedings supplementary brought by appellees, Theodore Gould and Miami Center Corporation, as general partners of Miami Center Limited Partnership (MCLP), in which the trial court found Driscoll personally liable for a fraudulent mechanics’ lien judgment obtained more than twenty years ago against one of his now defunct companies, James P. Driscoll, Inc. (JPDI).[1] Originally in excess of $1,800,000, the judgment — if now collectible against Driscoll — has swelled to more than $6,000,000. Driscoll argues that MCLP, which filed the action against JPDI in 1983, lacks standing to enforce the judgment against Driscoll because it was not listed on required schedules filed by MCLP a year later when it and four other debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. We disagree.
The fraudulent lien judgment arises out of JPDI’s work as the electrical subcontractor in the early 1980s on a prominent hotel and office development complex known as the Miami Center. During construction, the project became ensnarled in numerous disputes, not the least of which was a dispute between JPDI, the general contractor, and MCLP as owner, over payments alleged by JPDI to be owing on its subcontract. JPDI took steps to collect what it considered due, including filing a mechanics’ lien against the property. See James P. Driscoll, Inc., 521 So.2d at 302. *371 MCLP countered with a claim for filing fraudulent liens, slander of title and breach of contract.
Although the fraudulent lien action was filed by MCLP in 1983 and therefore was in existence in 1984 when MCLP filed its Chapter 11 petition, MCLP did not disclose the suit as required on the mandatory schedules that accompanied the petition. See 11 U.S.C. § 521(1) (2006). Based principally upon this fact, Driscoll argues the undisclosed action, which con-cededly became part of the bankruptcy estate at the time of commencement of the proceeding, remained part of the bankruptcy estate when the Chapter 11 proceeding finally was closed in 1998. He contends the language of another section of the Bankruptcy Code, section 554(c), supports his conclusion. Section 554(c) provides: “Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor....” 11 U.S.C. § 554(c) (2006) (emphasis added). Because, says Driscoll, the JPDI litigation was not scheduled and no court order expressly abandoned it to MCLP, MCLP does not hold the judgment and therefore lacks standing to proceed. See § 554(c); Parker v. Wendy’s Int’l, Inc., 365 F.3d 1268, 1272 (11th Cir.2004) (“At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate.”); Kolschefsky v. Harris, 72 P.3d 1144, 1147 (Wyo.2003) (“The automatic abandonment provision upon closing of a bankruptcy case pursuant to 11 U.S.C. § 554(c) is expressly limited to property that is properly scheduled.”); Vucak v. City of Portland, 194 Or.App. 564, 96 P.3d 362, 365 (2004) (“Debtors who fail, either through neglect or indifference, to recognize the requirements of section 521(1), ‘as a significant and integral part of filing a bankruptcy petition under Chapter 7, do so at their own peril.’ ”) (quoting In re Bayless, 78 B.R. 506, 509 (Bankr.S.D.Ohio 1987)).
Although we do not take issue with these authorities and agree they might indeed control in the context of a Chapter 7 proceeding, there is an independent avenue under which property may revest in a debtor at the conclusion of a Chapter 11 proceeding, namely the express terms and conditions of a confirmed plan of reorganization. See In re Coastline Care, Inc., 299 B.R. 373, 377 (Bankr.E.D.N.C.2003) (noting and explaining in considerable detail how “the bankruptcy process work[s] very differently in chapter 11 than in other chapters [ ]”). In this case, a plan of reorganization was proposed, approved, and consummated. A bankruptcy court-approved plan of reorganization is the equivalent of a final judgment in which the interests, rights, and duties of the debtor, creditor, and other interested parties “are gathered, jostled, and are determined and released.” In re Ionosphere Chibs, Inc., 262 B.R. 604, 612 (Bankr.S.D.N.Y.2001) (citing Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 91 (2d Cir.1997)). The parties disagree over whether the applicable provisions of the plan of reorganization in this case re-vested the JPDI mechanics’ lien action and judgment in MCLP at the conclusion of the proceeding. Based upon a careful and thorough review of the plan, enlightened by the highly commendable assistance of counsel for both parties in them 'written and oral submissions to us, under applicable federal principles and as argued to us by MCLP, we conclude the plan as proposed and approved by the bankruptcy court released and revested the right to pursue the JPDI judgment in MCLP upon the consummation and closure of the bank *372 ruptcy case. See In re Coastline Care, Inc., 299 B.R. at 377-78 (explaining that in a confirmed Chapter 11 case, property of the estate vests in the debtor unless the plan or confirmation order provides otherwise, and allowing for disposition “even if that property was not included in the debt- or’s schedules.”).
Accordingly, we affirm the judgment of the trial court.

. We affirmed this original judgment on appeal with minor exceptions not relevant here. See James P. Driscoll, Inc. v. Gould, 521 So.2d 301 (Fla. 3d DCA 1988).