Argued and submitted February 13, general judgment reversed in part and remanded; supplemental judgment for attorney fees reversed; otherwise affirmed October 11, 2006, petition for review denied February 21, 2007 (342 Or 416)

B. Carol GLOVER,
*Appellant,*

*v.*

The BANK OF NEW YORK,
a New York State corporation,
and HomEq Servicing Corporation,
a New Jersey corporation,
*Respondents,*

*and*

REGIONAL TRUSTEES SERVICES CORPORATION,
a Washington corporation,
*Defendant.*

CV030173; A127962

147 P3d 336

Terrance J. Slominski argued the cause for appellant. With him on the opening brief was Michael J. Slominski. On the reply brief was Michael J. Slominski.

Teresa Shill argued the cause for respondents. With her on the brief was Routh Crabtree Olsen, P.S.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Linder, Judge.

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Richardson, S. J.

**EDMONDS, P. J.**

Plaintiff brought this action alleging a breach of contract claim against defendant The Bank of New York (bank) on the ground that the bank had charged her for taxes and fees that had not been incurred with respect to a deed of trust on plaintiff's property. Plaintiff also sought an accounting and asked the court to enjoin the scheduled foreclosure on her property by the bank and its servicing agent, defendant HomEq Servicing Corporation (HomEq). The trial court sanctioned plaintiff for discovery violations, granted summary judgment in favor of defendants based on judicial estoppel, and awarded attorney fees to defendants. Plaintiff argues on appeal that the trial court abused its discretion in sanctioning her, misapplied the doctrine of judicial estoppel, and erred in failing to consider her objections to the attorney fee award. We affirm the trial court's award of sanctions and its application of the doctrine of judicial estoppel to plaintiff's first claim for relief. However, we reverse the trial court's application of that doctrine to plaintiff's second claim for relief, and, consequently, reverse the award of attorney fees predicated on the summary judgment ruling. Accordingly, we affirm in part and reverse in part, and remand for further proceedings.

## I. BACKGROUND

This case involves plaintiff's most recent attempt to stop defendants' nonjudicial foreclosure on property she owns in Gaston, Oregon ("the Gaston property"). In November 1997, plaintiff refinanced the Gaston property and obtained a loan in the amount of $294,000 from defendants' predecessor in interest, secured by a deed of trust. By the end of 1998, plaintiff had missed payments and was in default on the loan, and defendant's predecessor in interest initiated nonjudicial foreclosure proceedings.

In August 1999, two days prior to the scheduled foreclosure on the property, plaintiff filed a petition for relief in bankruptcy court under Chapter 13 of the United States Bankruptcy Code, thereby staying the foreclosure proceedings. In that petition, plaintiff listed a secured claim of $300,000 on the Gaston property by defendants' predecessor,

The Money Store (TMS). TMS filed a proof of claim stating that the principal balance owed was $292,718.15, and that plaintiff owed $33,013.22 for an arrearage amount and legal fees. Plaintiff did not object to the proof of claim. TMS filed a motion to lift the automatic stay, and the bankruptcy court granted the motion. Plaintiff then moved to dismiss the bankruptcy petition; the court granted that motion, and foreclosure proceedings were recommenced by TMS.

Four days before the next scheduled foreclosure in March 2000, plaintiff filed another Chapter 13 bankruptcy petition, this time on behalf of her incapacitated husband. She (on behalf of her husband) listed the amount of the secured claim by TMS as $313,000. TMS filed a proof of claim listing a principal balance of $292,718.15 and a balance of $68,272.47 for an arrearage and legal fees. Again plaintiff (on behalf of her husband) did not list any claims against TMS and did not object to the proof of claim. The bankruptcy was subsequently dismissed on plaintiff's motion, and foreclosure proceedings were again recommenced.

In May 2001, on the day of the next scheduled foreclosure, plaintiff filed a third Chapter 13 bankruptcy petition to stop the foreclosure on her property. Plaintiff listed the amount of TMS's secured claim at $300,000. Defendant HomEq filed a proof of claim in the amount of $402,331.58. Plaintiff did not list any claims or setoffs against HomEq and did not object to the proof of claim. This time, the bankruptcy proceeding was apparently dismissed because plaintiff failed to make payments according to her Chapter 13 repayment plan. Foreclosure proceedings commenced once again.

■ Plaintiff filed another Chapter 13 bankruptcy proceeding in May 2002 before her property could be foreclosed. This time, plaintiff scheduled a secured debt to defendant HomEq in the amount of $402,331.58—the amount of HomeEq's proof of claim in the prior bankruptcy. However, plaintiff checked a box indicating that the debt was disputed. Plaintiff did not schedule any claims against defendants or their predecessor in interest, TMS. The bankruptcy court issued an order to show cause why the case should not be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. After a hearing on the matter, the court dismissed the petition and barred plaintiff from filing another

bankruptcy proceeding for the period of two years based on the court's finding of "bad faith" pursuant to *In re Leavitt*, 171 F3d 1219 (9th Cir 1999).[1] After plaintiff's case was dismissed with prejudice, foreclosure proceedings recommenced.

In October 2002, ten days before the next scheduled foreclosure date, plaintiff filed a second Chapter 13 petition on behalf of her incapacitated husband. This time, plaintiff again scheduled the debt owed to HomEq as disputed. HomEq filed a proof of claim, but plaintiff again did not object. The case was dismissed for failure to make payments according to a Chapter 13 repayment plan, and a new foreclosure was scheduled for May 30, 2003.

Plaintiff filed her complaint in this action on May 29, 2003. She alleges a breach of contract claim against the bank on the ground that it charged her for property taxes and fees on the Gaston property that were not incurred. According to plaintiff's allegations, she "suffered damage in the approximate amount of $15,000" because the bank's actions precluded her from refinancing at a lower interest rate. Plaintiff also alleges a claim for declaratory and injunctive relief, requesting that the court require the parties to account for all payments made under the terms of the 1997 note and trust deed and to enjoin the scheduled foreclosure on the Gaston property. On that claim, she alleges that "[d]efendants claim that [p]laintiff owes more than $450,000 under the terms of her 1997 Note and Trust Deed. Plaintiff claims that she owes considerably less than that claimed by [d]efendants."

In answer to plaintiff's complaint, defendants assert, among other things, the affirmative defense of judicial estoppel. They allege,

---

[1] In *Leavitt*, the court held that a Chapter 13 bankruptcy case may be dismissed with prejudice based on a court's finding of bad faith. Under the "bad faith" standard announced in *Leavitt*, a case may be dismissed based on the totality of the circumstances, including a history of other filings; "[a] finding of bad faith does not require fraudulent intent by the debtor." 171 F3d at 1224. " 'Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that the debtor was affirmatively attempting to violate the law—malfeasance is not a prerequisite to bad faith.' " *Id.* at 1224-25 (quoting *In re Powers*, 135 BR 980, 994 (Bankr CD Cal 1991)).

> "The defense of judicial estoppel is based on the fact that plaintiff filed five Chapter 13 Bankruptcy cases after the time in which a non-judicial foreclosure action was commenced against the [Gaston] Property. Plaintiff filed these bankruptcies either individually, jointly with her husband, or upon her husband's behalf as his conservator * * *."

Defendants further allege that they filed a proof of claim in each of the bankruptcies that itemized the debt owed by plaintiff, and that

> "[a]t no time during these five bankruptcies did plaintiff file an [o]bjection to the [proofs of claims] filed by defendants. Plaintiff failed to list in her bankruptcy schedules any kind of payment dispute or claim of any nature, including for breach of contract, that she had, or believed that she may have had against defendants. At no time during any of the five bankruptcies did plaintiff file an adversary proceeding against defendants for any purpose, including to determine any kind of payment dispute or breach of contract claim. Each of these bankruptcies [was] filed while there was a pending non-judicial foreclosure action on the [Gaston] Property. Each time defendants' non-judicial action was stayed, and in three of the bankruptcies defendants were awarded an Order Granting Motion to Lift Stay against the Property."

In August 2004, defendants filed a motion to compel plaintiff's production of documents related both to plaintiff's claims and to a counterclaim that defendants had filed.[2] Defendants argued that plaintiff had failed to produce complete copies of various items, including proof of an alleged payment that plaintiff contends was made to defendants' predecessor in interest. Defendants also sought documents that purportedly would reflect the fact that the Yamhill County tax collector had improperly credited defendants' payment of plaintiff's property taxes to one of plaintiff's other properties. After a hearing, the trial court granted the motion to compel.

Defendants subsequently filed a motion to dismiss for failure to comply with the motion to compel, arguing that plaintiff had failed to produce documents identified in the

---

[2] The counterclaim was subsequently dismissed by stipulation of the parties.

order to compel, and that counsel for plaintiff had responded with "annoyance and hostility" to their requests. Following a hearing on the motion to dismiss, the trial court imposed sanctions on plaintiff for failing to comply with the discovery order, including an award of attorney fees and certain expenses incurred by defendants in obtaining the requested documents.

While the motion to dismiss was pending, defendants filed a motion for summary judgment based on, among other things, judicial estoppel. Defendants relied primarily on records from the bankruptcy proceeding and on testimony from plaintiff's deposition to the effect that the bankruptcy proceedings were filed solely to save her property. After a hearing on the motion, the trial court granted summary judgment to defendants. The court reasoned that

> "*Caplener v. U.S. National Bank of Oregon*, 317 Or 506 (1993) and other cases cited therein, are on point. In that case, judicial estoppel applied to prevent a party from asserting a claim in a state court proceeding which it had failed to disclose (or had underdisclosed) during a prior bankruptcy proceeding."

The court asked defendants' counsel to prepare the judgment.

Eventually, and notwithstanding a dispute over the timeliness of plaintiff's objections to defendants' attorney fee statement, the trial court entered a general judgment in favor of defendants as to plaintiff's claims on the ground of judicial estoppel, a limited judgment capturing the fee award as a sanction for violation of a court order, a second limited judgment for attorney fees and costs awarded as a sanction for violation of a court order, and a supplemental judgment for an attorney fee award against plaintiff based on the grant of summary judgment. Plaintiff appeals.[3]

---

[3] Although four judgments are attached to plaintiff's Notice of Appeal, the notice indicates that she appeals from only three judgments: the

> "General Judgment entered in this case on February 22, 2005, the Limited Judgment for attorneys fees and costs awarded against Plaintiff as a sanction for violation of a court order entered in this case on February 22, 2004 [*sic*], and the Supplemental Judgment for Attorneys Fees awarded against Plaintiff on February 22, 2005 by The Honorable Carol Jones, in the Yamhill County Circuit Court."

The notice of appeal and plaintiff's briefs do not otherwise mention the second limited judgment for attorney fees; we will confine our review to those judgments that

## II. ANALYSIS

A. *Judicial estoppel and the award of attorney fees on summary judgment*

We turn first to whether the trial court erred in granting summary judgment under ORCP 47 on the ground of judicial estoppel. Plaintiff's and defendants' arguments on appeal start from the same premise—namely, that the elements of judicial estoppel are those elements set forth in *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 611, 892 P2d 683 (1995): a "benefit in the earlier proceeding, different judicial proceedings, and [the taking of] inconsistent positions [in the different judicial proceedings]." However, they disagree as to whether those elements have been satisfied on this record. For reasons that will become apparent, we treat plaintiff's claims as alleged in her complaint separately for purposes of our review.

### 1. *The breach of contract claim*

■ Plaintiff's breach of contract claim alleges that, as a result of defendants' improper actions, plaintiff was unable to refinance her house at a lower rate and was thereby damaged in the amount of $15,000. To prevail at the summary judgment stage on that claim, defendants must establish that there is no genuine issue as to any material fact and that they are entitled to judgment based on the doctrine of judicial estoppel as a matter of law. ORCP 47 C.

The following facts are undisputed by plaintiff with respect to the breach of contract claim: Plaintiff, on her own behalf or on behalf of her husband, has filed five Chapter 13 bankruptcies since 1999 for the sole purpose of stopping foreclosure on the Gaston property. The bankruptcy court found that her repeated bankruptcy filings, under the totality of the circumstances, were made in bad faith. Plaintiff did not list her breach of contract claim against defendants as a potential asset of the bankruptcy estate in any of those bankruptcies. In each of the bankruptcies, defendants or their predecessor in interest filed proofs of claim reflecting the fact that the disputed payment had not been made, and plaintiff did

are contained in the notice itself and the briefs and will not address the second limited judgment for attorney fees imposed as a sanction.

not object to the proofs of claim; by at least the second bank-ruptcy petition, the events giving rise to her breach of con-tract claim had already occurred.

Based on those undisputed facts, we conclude that defendants have established the elements of judicial estop-pel. Plaintiff took a position in a prior judicial proceeding that is inconsistent with the position that she now advances in this case: In each of the bankruptcy proceedings, she (on her own behalf or on behalf of her husband) failed to list any claim against defendants or their predecessor in interest, despite a legal obligation to do so. *See Vucak v. City of Portland*, 194 Or App 564, 570, 96 P3d 362 (2004) ("Debtors in bankruptcy have an affirmative duty 'carefully, completely and accurately' to schedule assets and liabilities.") (quoting *Cusano v. Klein*, 264 F3d 936, 946 (9th Cir 2001)). The failure to list the existence of the breach of contract claim against defendants or their predecessor in interest places plaintiff in a position in this case that is fundamentally inconsistent with her position in the prior bankruptcies.

Moreover, under the circumstances of this case, we have no difficulty concluding that plaintiff received a benefit from failing to schedule the breach of contract claim in the prior proceedings. The undisputed evidence leaves a single inference regarding plaintiff's purpose in filing her bank-ruptcy claims: she hoped to delay foreclosure on her home. By failing to list any claims against defendants or their prede-cessor in interest, plaintiff made it less likely that the bank-ruptcy trustee would have chosen to litigate those claims. Had the claims been conclusively litigated—and the amounts owing on the loan been finally determined—she would not have had the ability to continue to delay foreclosure. Given that her admitted purpose was to delay foreclosure—evi-denced both by her repeated bankruptcy filings and her own deposition testimony—plaintiff received a benefit from fail-ing to adequately schedule her breach of contract claim against defendants, thereby enhancing her ability to con-tinue to delay foreclosure.

■　　　Plaintiff, however, argues that, under the test set forth in *Hampton Tree Farms*, the doctrine of judicial estop-pel is inapplicable in this case because no bankruptcy court

actually accepted any of the statements (or omissions) that plaintiff made in her bankruptcy schedules. Plaintiff also relies on *Day v. Advanced M&D Sales, Inc.*, 336 Or 511, 86 P3d 678 (2004), for the proposition that judicial estoppel may be invoked only when another court has *accepted* an inconsistent position taken in the different proceeding. We decline to read *Hampton Tree Farms* and *Day* so narrowly.

*Hampton Tree Farms*, like this case, involved the dismissal of a bankruptcy petition. In *Hampton Tree Farms*, one of the defendants, Erickson Hardwood Company (EHC), asserted a counterclaim against the plaintiff, Hampton Tree Farms, Inc. (Hampton). Hampton moved for summary judgment on the ground of judicial estoppel, arguing that EHC had previously represented to the bankruptcy court—in a motion to dismiss its Chapter 7 liquidation—that it had no assets other than those pledged to another creditor.

The Supreme Court began its analysis of the doctrine of judicial estoppel by noting that "[j]udicial estoppel is a common law equitable principle that has no single, uniform formulation in the several jurisdictions in which it has been recognized." 320 Or at 609. The purpose of judicial estoppel, the court stated, "is 'to protect the judiciary, as an institution, from the perversion of judicial machinery.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F2d 595, 599 (6th Cir 1982)). It followed that statement with a summary of the treatment of judicial estoppel in other jurisdictions. We quote that discussion in its entirety here (including citations and footnote) because it informs our understanding of the court's holding in *Hampton Tree Farms*:

> "The doctrine may be invoked under certain circumstances to preclude a party from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding. *See generally Caplener v. U.S. National Bank*, 317 Or 506, 516, 857 P2d 830 (1993) (stating principle); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F2d 414, 417 (3d Cir), *cert den* 488 US 967 (1988) (same).[7] Some courts have stated that judicial estoppel should apply when a litigant 'is playing fast and loose with the courts.' *Sandstrom v. Chemlawn Corp.*, 904 F2d 83, 87-88 (1st Cir 1990) (citing *Scarano v. Central R. R.*, 203 F2d 510 (3d Cir

1953)); *Grant v. Lone Star Co.*, 21 F3d 649, 651 n 2 (5th Cir), *cert den*[, 513 US 1015] (1994); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F2d 107, 121-22 (3d Cir 1992) (judicial estoppel is intended to protect the courts rather than the litigants), *cert den*[, 507 US 1005] (1993); *Rockwell Intern. v. Hanford Atomic Metal Trades*, 851 F2d 1208, 1210 (9th Cir 1988) (same). Other courts have said that judicial estoppel should be used only to preclude a party from taking an inconsistent position in a later proceeding if that party has 'received a benefit from the previously taken position in the form of judicial success.' *Water Technologies Corp. v. Calco, Ltd.*, 850 F2d 660, 665 (Fed Cir), *cert den* 488 US 968 (1988). *See Bates v. Long Island R. Co.*, 997 F2d 1028, 1038 (2d Cir) (the prior inconsistent position must have been adopted by the court in some manner), *cert den*[, 510 US 992] (1993); *Edwards*, 690 F2d at 599 (judicial estoppel cannot be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding); *Konstantinidis v. Chen*, 626 F2d 933, 939 (DC Cir 1980) (success in the prior proceeding is an essential element of judicial estoppel); *see also* Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, NW U L Rev 1244 (1986) (favoring 'prior success' rule).

---

"[7] The doctrine of 'judicial estoppel' has been applied by federal courts to hold that a debtor who invokes the protection of the bankruptcy court and purports to disclose all of its assets, including claims that it might assert in litigation, is precluded from later asserting a claim that existed at the time of the bankruptcy but was not disclosed. *In Matter of Howe*, 913 F2d 1138, 1147 (5th Cir 1990); *In re Louden*, 106 BR 109, 112 (Bkrtcy ED Ky 1989); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F2d 414 (3rd Cir), *cert den*, 488 US 967 (1988). Courts also rely on the principles of *res judicata* and equitable estoppel in holding that a failure to disclose existing claims during the pendency of a bankruptcy proceeding bars the debtor's later assertion of the undisclosed claims. *In re Hoffman*, 99 BR 109 (Bkrtcy ND Iowa 1989)."

320 Or at 609-10.

Thereafter, the court discussed its earlier decision in *Caplener* in greater detail. Although the court had never previously held that "the party sought to be estopped must have

benefitted as a result of its earlier assertion of an inconsistent position taken in a different judicial proceeding," *id.* at 610, that factor was present in *Caplener*: "[T]he party being estopped in *Caplener* had benefitted as a result of its earlier assertion of an inconsistent position taken in the bankruptcy court, first by being able to obtain interim financing, and later by having all its debts discharged without disclosure of its $11 million claim against the bank." *Id.* at 611. However, the court emphasized, "Notwithstanding, in *Caplener*, this court made no attempt to formulate the general principles of the doctrine of judicial estoppel." *Id.*

After discussing the general principles of judicial estoppel in other jurisdictions, the court framed the relevant inquiry for determining whether a party can assert the affirmative defense of judicial estoppel: "That inquiry involves three issues: benefit in the earlier proceeding, different judicial proceedings, and inconsistent positions." *Id.* The court proceeded to address only one of those factors, finding "no evidence in the record from which the trial court could have concluded as a matter of law that EHC obtained any benefit by having its Chapter 7 proceeding dismissed without prejudice." *Id.* Significant to plaintiff's arguments, at no point did the court in *Hampton Tree Farms* hold that an inconsistent position asserted in another tribunal must be accepted by that tribunal before the doctrine of judicial estoppel will be invoked.

The court's holding in *Day* is not to the contrary. In *Day*, the plaintiff filed a complaint alleging common-law negligence and violations of the Employer Liability Law. The defendant moved for summary judgment, arguing, among other things, that judicial estoppel prohibited the plaintiff from denying that he was a covered worker under the defendant's workers' compensation insurance and that the exclusive remedy provisions of the Workers' Compensation Law therefore barred his action. The record revealed that the plaintiff had previously filed a notice of claim with the defendant's insurer, that the defendant's insurer had determined that the plaintiff was a covered worker and had accepted the claim, and that the plaintiff had received workers' compensation benefits from the insurer in the amount of $24,817. However, the record did not include a notice of acceptance,

notice of closure, or further information regarding any activity on the plaintiff's workers' compensation claim, and it did not include "any correspondence or order from, or any action by, the Workers' Compensation Division of the Department of Consumer and Business Services regarding [the] plaintiff's claim." *Id.* at 515.

The court began its discussion of judicial estoppel by quoting from *Hampton Tree Farms*:

> "Parties invoke judicial estoppel 'under certain circumstances to preclude a party from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding.' [*Hampton Tree Farms*, 320 Or at 609]. Judicial estoppel is 'primarily concerned with the integrity of the *judicial* process and not with the relationship of the parties[.]' *Hampton Tree Farms*, 320 Or at 612 (emphasis added)."

*Day*, 336 Or at 524.

Turning to the facts before it, the court held:

> "The focus of that doctrine *on acceptance of an earlier position and harm to the judicial system* defeats defendant's effort to invoke judicial estoppel here. As noted previously, the record is devoid of any indication that an administrative or judicial tribunal made a final determination regarding plaintiff's status as a subject worker at the time of his injury."

*Id.* at 524-25 (emphasis added). The court therefore concluded that the plaintiff's "attempt to take a contrary position in his complaint does not implicate the type of harm to the judicial system for which judicial estoppel is designed." *Id.* at 525.[4]

---

[4] We similarly focused on harm to the judiciary in *White v. Goth*, 182 Or App 138, 47 P3d 550 (2002). In that case, we examined the doctrine of judicial estoppel with an eye toward the importance of "judicial acceptance" of the prior inconsistent position. We observed that the doctrine of judicial estoppel "has a twofold purpose: to preserve the sanctity of the oath and to protect the integrity of the judicial system by preventing inconsistent results in separate proceedings." 182 Or App at 141. We noted that "[m]ost courts require the statement or position to have been accepted and acted upon by the court in the earlier proceeding in order for the doctrine to apply." *Id.* After analyzing *Caplener*, we concluded that the Supreme Court had not addressed "the question of whether the court in the prior proceeding had to accept or adopt the position that is inconsistent with the position taken in the later proceeding." *Id.* at 142. Nor did we draw anything conclusive on that issue from

In sum, we disagree with plaintiff's argument that in order for the doctrine of judicial estoppel to apply, a court must have relied or acted upon an inconsistent position. Our Supreme Court has not described the doctrine in terms of a rigid formula, but rather has emphasized that judicial estoppel is appropriate to protect the integrity of the judicial process. *Day*, 336 Or at 524. In this case, we have no trouble concluding that the facts pose the type of harm to the judicial system that warrants invocation of the doctrine of judicial estoppel. Defendants contend that plaintiff asserted her breach of contract claim in state court only after "she wore out her welcome in the United States Bankruptcy Court." After reviewing the summary judgment record, we conclude that that is the only inference that a reasonable factfinder could draw. Plaintiff carefully avoided final resolution of all of her claims in her previous bankruptcy proceedings, then dismissed those proceedings as soon as she was unable to use them to delay the foreclosure, and then refiled the bankruptcy as soon as foreclosure proceedings were commenced. On those facts and without any controverting evidence from plaintiff in the summary judgment record, we conclude that the only permissible legal conclusion is that plaintiff was manipulating the judicial system in a manner that harmed its integrity. Thus, based on the above circumstances, we conclude that the trial court correctly applied the doctrine of judicial estoppel to the breach of contract claim.

## 2. *The claim for declaratory and injunctive relief*

■        Plaintiff's claim for declaratory and injunctive relief alleges that defendants are asserting that plaintiff "owes

*Hampton Tree Farms. Id.* Ultimately, our decision in *White* also left the issue unresolved. The trial court had based its dismissal on the conclusion that "plaintiffs were 'playing fast and loose' with the system"—a ground for judicial estoppel only under the minority view. *Id.* However, we concluded that the defendants' proof failed to meet even that standard, again focusing on the integrity of the judicial process:

> "The doctrine of judicial estoppel focuses on the relationship of the litigant to the courts. In that regard, generally an individual is not barred from filing a subsequent action based on the same claim when the previous action was dismissed without prejudice. The fact that plaintiffs may favor their daughter and choose to enforce or refrain from enforcing claims based on her marital status is not a threat to the integrity of the judicial process."

*Id.* at 142-43.

more than $450,000 under the terms of her 1997 Note and Trust Deed" when plaintiff owes "considerably less." Like the breach of contract claim, plaintiff's second claim for relief appears to be based on the allegation that defendants have failed to credit plaintiff for one of the payments she made on the Gaston property and that, because of that failure, they have incorrectly calculated the amount owing on the note and trust deed.

Defendants counter that, in each of the bankruptcy proceedings, they or TMS filed a proof of claim consistent with the fact that the disputed payment was not made. They argue that plaintiff never objected to the proofs of claim; therefore, in their view, the position that plaintiff takes in this case is inconsistent with her position in the bankruptcies. For the reasons that follow, we conclude that defendants have failed to demonstrate that they are entitled to judgment as a matter of law under ORCP 47 C.

In each of the five bankruptcies, plaintiff scheduled a debt owed to defendants in an amount less than that stated in defendants' proof of claim and/or checked a box indicating that the amount of the debt was disputed. Thus, plaintiff's position in the bankruptcies—at least as far as her schedules were concerned—was not inconsistent with the position that she takes in this case, *i.e.*, that she owes less to defendants than they claim.

Although it is correct that plaintiff did not object to the proofs of claim before her bankruptcy cases were dismissed, defendants do not explain why her failure to object constitutes an inconsistent statement for purposes of judicial estoppel as a matter of law. In a Chapter 13 bankruptcy, an objection to a proof of claim may be filed at any time. *In re Consolidated Pioneer Mortgage*, 178 BR 222 (BAP 9th Cir 1995), *aff'd mem*, 91 F3d 151 (1996). Moreover, there may be tactical considerations concerning the timing of filing an objection, including doing so after a Chapter 13 plan is confirmed. *See* William M. Collier, 9 *Collier on Bankruptcy* ¶ 3007.01[5] (Lawrence P. King ed., 15th ed 2002). *But see In re Simmons*, 765 F2d 547, 553-54 (5th Cir 1985) (barring objection to secured claim filed after confirmation of Chapter 13 plan). On this record, it is plausible that plaintiff would have

objected at some later time to the proofs of claims, had the bankruptcies continued. *Cf. Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ 8294 (PKL), 1999 WL 397751 at *8-9 (SD NY June 16, 1999) (holding that the absence of an objection to a proof of claim in a Chapter 11 bankruptcy does not have preclusive effect where the bankruptcy statutes do not impose a specific time period for objecting). For that reason, it does not necessarily follow from plaintiff's lack of objection to the proofs of claim that plaintiff intended to adopt the position asserted in defendants' proofs of claim or to waive any objection to those proofs of claim. *Cf. McMillan v. Follansbee*, 194 Or App 145, 154, 93 P3d 809 (2004) (waiver of a statutory right requires an intentional relinquishment or abandonment of a known right or privilege). Thus, we conclude that defendants have failed to establish, as a matter of law, that plaintiff took an inconsistent position in the bankruptcy proceedings simply by failing to object to the proofs of claim before the proceedings were dismissed. *Hampton Tree Farms*, 320 Or at 611. Accordingly, defendants are not entitled to summary judgment on plaintiff's claim for declaratory and injunctive relief on the ground of judicial estoppel.

Because we have reversed, in part, the trial court's grant of summary judgment to defendants, we necessarily reverse the award of fees that was predicated on that ruling. ORS 20.220(3) ("When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates: (a) If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]"). For that reason, we do not address plaintiff's arguments regarding the trial court's refusal to consider her objections to defendants' attorney fee statement under ORCP 68 C.

B. *Discovery sanctions*

Finally, we turn to the trial court's imposition of sanctions for plaintiff's failure to comply with the court's order to produce certain documents. As discussed above, defendants filed a motion to compel the production of documents. Defendants argued that plaintiff failed to produce complete copies of various items, including proof of payments allegedly made by plaintiff to TMS. Specifically, defendants

sought proof of the very first payment made by plaintiff on the loan, a payment that plaintiff contends was not properly credited to her. Defendants submitted an affidavit from their counsel to the effect that plaintiff promised to obtain records from the bank regarding the payment, but that plaintiff then failed to perform as promised. Defendants further moved to compel the production of documents regarding disposition of the missing payment that plaintiff's counsel admitting having, but had refused to produce on the ground that plaintiff had made notations on the documents. Defendants also argued that plaintiff had failed to produce certain property tax information regarding the payments that had been made by defendants on the Gaston property and that had purportedly been improperly applied to another property owned by plaintiff.

On appeal, plaintiff first argues that the trial court abused its discretion in sanctioning plaintiff for failing to comply with a discovery order that was too vague. Plaintiff's argument requires us to determine whether plaintiff would have understood what documents were required to be produced, and whether the trial court properly exercised its discretion in sanctioning plaintiff in light of that order. Nonetheless, plaintiff has not designated the transcript for the hearing on the motion to compel or the motion to dismiss for failure to comply with the order to compel, and we are unable to reconstruct the underlying events upon which the trial court exercised its discretion to sanction plaintiff. Thus, we simply are not in a position to determine whether the trial court abused its discretion. *See King City Realty v. Sunpace*, 291 Or 573, 582, 633 P2d 784 (1981) (appellant required to designate portions of the record necessary to establish error); *Reeder v. Kay*, 276 Or 1111, 1115, 557 P2d 673 (1976) (appellant has the obligation to provide a reviewing court with the transcript necessary to review a challenged ruling); *Watts v. Lane County*, 142 Or App 489, 492, 922 P2d 686 (1996), *rev den*, 325 Or 247 (1997) (same).[5]

---

[5] Even assuming that the order itself is vague—an issue that we expressly do not decide—it is conceivable that the scope of the order would have been fleshed out by the parties and the court at the hearing on the motion to compel, and that the court's reasons for exercising its discretion would have been identified in the hearing on the motion to dismiss for failure to comply with the court's order. We cannot

Next, plaintiff argues that she was "[a]pparently sanctioned for not producing tax records that are maintained as part of the public records of Yamhill County." Again, our review is hampered by plaintiff's failure to designate the transcripts of either the hearing on the motion to compel or the hearing on defendants' motion for sanctions; without those transcripts, we are unable to interpret the order imposing sanctions in the context of the court's interactions with the parties or to determine the reasoning underlying the court's exercise of its discretion to impose sanctions. Plaintiff correctly points out that the order imposing sanctions ultimately assesses plaintiff for defendants' costs in obtaining certain property tax records from Yamhill County. That fact, however, is not identified in the order as a ground for imposing sanctions against plaintiff. Rather, the order sanctions plaintiff for engaging in "obstinate" behavior and imposes the cost of obtaining records from the county as a sanction for that obstinate behavior. In sum, plaintiff asks us to speculate as to why the court found plaintiff to be in violation of the order to compel, despite the existence of a transcript that could illuminate those issues. On this record, we are unwilling to engage in such speculation.[6]

General judgment reversed in part and remanded; supplemental judgment for attorney fees reversed; otherwise affirmed.

---

determine whether the trial court abused its discretion in sanctioning plaintiff on an incomplete record regarding those hearings.

[6] We further note that, although we generally "review the trial court's decision that attorney fees are appropriate under ORCP 46 B(3) for abuse of discretion[,]" *Weber v. Mahler*, 163 Or App 186, 189-90, 986 P2d 1273 (1999), the trial court exercised its discretion in this matter based on factual findings. Those factual findings included an explicit finding that plaintiff engaged in "obstinate" conduct during discovery, and an implicit finding that plaintiff's conduct caused defendants to incur attorney fees and costs to obtain certain documents as a result of that obstinate behavior. We would review those underlying factual findings "as we usually review findings of fact in nonequity civil proceedings—that is, for any evidence." *Shumake v. Foshee*, 197 Or App 255, 261, 105 P3d 919 (2005). There appears to be ample evidence in the record from which the trial court could have concluded that plaintiff was impeding the discovery process.