Paul JEWETT,
*Plaintiff-Appellant,*

*v.*

STERLING FURNITURE CO.,
dba M. Jacobs Fine Furniture,
*Defendant-Respondent.*

Lane County Circuit Court
121305825; A158277

371 P3d 1290

Young Walgenkim argued the cause for appellant. With him on the briefs were Conrad E. Yunker, Conrad E. Yunker, P.C., and Hanson & Walgenkim, LLC.

George W. Kelly argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

DUNCAN, P. J.

**DUNCAN, P. J.,**

Plaintiff appeals the trial court's supplemental judgment awarding him attorney fees in an amount less than he requested. The trial court based the reduced award on its finding that plaintiff had "abandon[ed] what had been successful settlement negotiations." On appeal, plaintiff contends that the trial court's finding is not supported by any evidence in the record. We agree and, therefore, we vacate the attorney fee award and remand for reconsideration.

Plaintiff purchased a mattress from defendant, paying full retail price. Defendant represented to plaintiff that the mattress was a new mattress with a warranty. Later, when plaintiff attempted to exercise the warranty, he discovered that the mattress had a "floor sample" tag on it. Defendant informed plaintiff that, because he had a floor sample mattress, it was not under warranty. Defendant referred plaintiff to the mattress manufacturer, Sealy, which also said that the mattress was not under warranty. (Defendant pays Sealy less for floor sample mattresses than for new retail mattresses.) In response, plaintiff reminded defendant that he had purchased a new mattress. Defendant ultimately acknowledged that plaintiff had purchased a new mattress, not a floor sample, and the parties entered into negotiations to resolve the matter. They reached an agreement, one term of which was that defendant would pay plaintiff $700 in attorney fees. But, as detailed below, the parties were unable to finalize their agreement, and plaintiff filed a complaint against defendant, raising two claims under the Unlawful Trade Practices Act, ORS 646.605 to 646.656.

The case proceeded to court-annexed arbitration, and the arbitrator awarded plaintiff $920 in damages and $15,670.75 in costs and attorney fees. Defendant requested a trial *de novo*, ORS 36.425(2)(a), but, prior to trial, the parties agreed to the entry of a stipulated judgment in favor of plaintiff for $920 in damages, plus costs and attorney fees to be determined by the trial court.

Plaintiff filed an ORCP 68 petition for attorney fees, seeking $36,900 for a total of 184.5 hours of work, 17.4 of which was for work done before the filing of the complaint. In support of his petition, plaintiff submitted exhibits,

including copies of emails that the parties had sent to each other during their negotiations.

The record shows that, on or before February 14, 2013, the parties reached an oral agreement, and plaintiff's counsel sent defendant's representative a written agreement. The written agreement states that defendant "[s]hall deliver * * * a brand new (not floor model) king size mattress with the equivalent value and quality of [plaintiff's current mattress] with a fully operative manufacturer's warranty, matching box springs, and a matching mattress pad[,]" remove plaintiff's "old mattress and box springs[,]" and "pay [plaintiff's] attorney fees of $700."

On February 14, plaintiff's counsel sent an email to defendant's representative stating that plaintiff wanted to go to a local store to pick out the replacement mattress, and that plaintiff's counsel would notify defendant of the replacement model that plaintiff selected. In response to that email, defendant's representative sent an email dated February 15, 2013, stating that the "bedding line that [plaintiff] purchased is no longer available" and that "Sealy decides as to which bed is most comparable to what [plaintiff] purchased." The email further states that "Sealy also noted the new bed will be within the same price range as the original purchase." The email identifies two models in that price range, including the "Bryan Park" model, and provides that "[plaintiff] may upgrade if he chooses but will be responsible for the cost difference."

In reply, plaintiff's counsel sent an email dated February 18, 2013, stating that the settlement agreement was between plaintiff and defendant, not Sealy, and that "[a]ny arrangement with the warranty with Sealy is really not our concern." The email continues, "That being said, I think your proposal will work for us." The email further states that plaintiff had selected the Bryan Park model.

Later the same day, defendant's representative sent an email stating that Sealy "will honor their standard warranty and has authorized the exchange of the customer's mattress" and that the Bryan Park model "is an approved reselection." The email also states that "[defendant] will not be responsible for any attorney fees" and that if plaintiff did

not agree to the terms in the email, plaintiff should "complete this claim directly with [Sealy] as [defendant] will not be extending any further offers in this matter."

At the conclusion of the hearing on plaintiff's petition for attorney fees, the trial court found that the parties "had actually agreed to a $700 attorney fee award" but that "the negotiations didn't break down about the attorney fee award." Instead, the trial court found that the negotiations "broke down regarding the settlement agreement that was going to be used, which had more to do with whether the replacement was going to be an exact replacement or a replacement based upon what the warranty process would authorize." Correspondingly, in the order it issued after the hearing, the trial court found that "[t]he parties engaged in settlement discussions in early February 2013 which culminated in a general agreement to resolve the matter for a new mattress and $700 in attorney fees. However, negotiations deteriorated later in the month over the language of the written agreement."

Of the $36,900 plaintiff requested for the 184.5 hours his attorneys spent on the case, the trial court awarded plaintiff only $3,480, which was for the 17.4 hours the attorneys spent before filing the complaint. The trial court declined to award fees incurred after the filing of the complaint because it concluded that "it was not reasonable * * * for plaintiff to abandon what had been successful settlement negotiations." *See* ORS 20.075 (identifying factors to be considered when determining attorney fees, including "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute").[1]

On appeal, plaintiff asserts that the trial court's factual finding regarding the reason for the failure of the settlement negotiations is not supported by any evidence in the record. According to plaintiff, the trial court "mistakenly

---

[1] The trial court concluded that the time billed for certain tasks—preparing a motion for summary judgment and preparing for depositions—after the filing of the complaint was excessive. In response, plaintiff's counsel informed the court that he understood the hours were high and that, although he and his partner, who were both relatively inexperienced, had worked the hours, they should not have billed for all of them. Accordingly, plaintiff's counsel asked the trial court to award fees in an amount that the court determined was reasonable.

transposed the parties' settlement positions" because "[t]he record is clear * * * that it was [defendant] that breached the settlement agreement, forcing [plaintiff] to sue." To support his assertion, plaintiff relies on the parties' emails.

In response, defendant asserts that the trial court's factual finding is supported by the record. To support its assertion, defendant relies on statements that its attorney made during the hearing regarding the parties' negotiations and the attorney's characterization of the parties' emails. Defendant contends that plaintiff's counsel's February 18 email, in which he said "[a]ny arrangement with the warranty with Sealy is really not our concern[,]" "caused the settlement to unravel."

We review the trial court's factual findings to determine if they are supported by any evidence in the record. *Grisby v. Progressive Preferred Ins. Co.*, 233 Or App 210, 220, 225 P3d 101 (2010). If a trial court bases an attorney fee award on a "materially erroneous factual premise," we will remand the case for reconsideration of the award. *Id.* at 220-21 (remanding for reconsideration of attorney fee award where award was based on a finding regarding the parties' settlement negotiations that was "unsupported by any evidence in the record and transpose[d] the parties' positions as substantiated by the only evidence of that interaction").

The trial court's finding regarding the reason for the failure of the parties' settlement negotiations is not supported by any evidence in the record. As mentioned, the trial court found that the parties had reached an agreement in early February 2013 for a new mattress and $700 in attorney fees. The parties' emails are the only evidence in the record regarding the parties' conduct after that agreement, and, contrary to the trial court's finding, the emails do not reflect a disagreement about what the warranty process would authorize. As described, in the February 15 email, defendant's representative stated that Sealy would choose a comparable mattress in the same price range as the mattress plaintiff had purchased and identified two such models. In his February 18 email, plaintiff's counsel said that defendant's proposal would work and that plaintiff had selected one of the two comparable models. Then,

in its February 18 email, defendant's representative said that Sealy had "authorized the exchange" and that the model plaintiff had selected was an "approved reselection." Nothing in the emails indicates either that the parties disagreed about the exchange process or that plaintiff had done anything to derail the negotiations.

At the hearing on plaintiff's petition for attorney fees, defendant's counsel asserted that the parties had disagreed about whether plaintiff would receive a replacement mattress without additional charge or a replacement mattress at a discounted price prorated to reflect the amount of time that plaintiff had had the mattress that he had purchased. Defendant's counsel's arguments are not evidence, *State v. Green*, 140 Or App 308, 317 n 11, 915 P2d 460 (1996) ("[A]n attorney's arguments are not evidence."); *see also Laird v. Stroot*, 188 Or App 118, 126, 71 P3d 105 (2003) (stating that claims about the defendant's statements that the plaintiff made in his arguments "are not evidence"), and there is no evidence in the record to support a finding that the parties had such a disagreement at all, much less that they had one before defendant repudiated its agreement to pay attorney fees and declared that, if plaintiff did not want to accept that, then plaintiff should contact Sealy because defendant would not be "extending any further offers in this matter."

Apparently relying on defendant's counsel's statements, the trial court found that the parties had disagreed about what the warranty would authorize. But the only warranty issue that defendant raised in the emails was that Sealy would decide what mattress was comparable to the one that plaintiff had purchased, and plaintiff agreed with defendant on that issue.

In sum, the trial court's finding that plaintiff "abandon[ed] what had been successful settlement negotiations" is not supported by any evidence in the record. To the contrary, the emails reflect plaintiff's acceptance of defendant's proposed exchange.[2]

---

[2] To be clear, we hold only that the trial court's factual finding regarding the breakdown of the settlement negotiations is not supported by any evidence, and we remand for the trial court to reconsider the award in light of the evidentiary

Supplemental judgment for attorney fees vacated and remanded for reconsideration.

record. Our holding does not preclude the trial court from considering the reasonableness of the parties during settlement negotiations (or at any other point during the dispute). *See* ORS 20.075 (identifying factors courts must consider when deciding whether to award attorney fees and, if so, how much, including the conduct of the parties in the transaction that gave rise to the litigation and the objective reasonableness of the parties' claims, defenses, conduct during the proceedings, and efforts to settle the dispute); *Erwin v. Tetreault*, 155 Or App 205, 207, 215, 964 P2d 277 (1998), *rev den*, 328 Or 330 (1999) (affirming reduction of fees from $31,926 to $10,000 based, in part, on objectively unreasonable rejection of settlement offer).