Submitted on remand from the Oregon Supreme Court April 2, affirmed
June 12, 2003

Melvin L. LAIRD,
*Appellant,*

*v.*

Dr. Randall C. STROOT
and Dr. Fadi Elias Malak,
*Respondents.*

97CV0346; A103337

71 P3d 105

A. Sue Guthrie filed the brief for appellant.

Thomas F. Armosino filed the brief for respondents. With him on the brief was Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff sued defendants, two podiatrists, for malpractice in their treatment of his hammertoe condition.[1] The trial court granted summary judgment to defendants on statute of limitations grounds, and we originally affirmed without opinion. *Laird v. Stroot*, 165 Or App 314, 995 P2d 597 (2000).[2] The Supreme Court thereafter allowed plaintiff's petition for review, vacated our decision, and remanded the case to us for reconsideration in light of *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 60 Or 535 (2002). *Laird v. Stroot*, 335 Or 217, 65 P3d 1108 (2003). We again affirm.

We state the facts in the record most favorably to plaintiff, the nonmoving party. ORCP 47 C. On February 10, 1994, defendants operated on plaintiff's right foot to correct a hammertoe condition. The operation did not resolve that condition; instead, plaintiff's foot failed to heal properly and showed signs of infection. Defendants nevertheless told plaintiff that what he was experiencing was part of the normal healing process. Plaintiff is not a physician and does not know what is or is not part of the treatment of a hammertoe. Defendants eventually told him that further surgery was necessary. They operated again on May 5, 1994; during that operation, they found a piece of gauze that they had left in his foot during the first operation. Immediately after the second operation, they told plaintiff about the presence of the gauze in his foot, but they did not inform him that they had been negligent in leaving it there.[3]

---

[1] Although plaintiff is represented by counsel on appeal, he acted *pro se* in the trial court.

[2] In his appellant's brief, plaintiff made three assignments of error: (1) "The trial court erred in delegating its judicial authority to a non-lawyer[.]"; (2) "The trial court erred in concluding there were no material facts in dispute which precluded the granting of summary judgment."; and (3) "The trial court erred in concluding that appellant's right to bring suit was barred by the statute of limitations." We reject plaintiff's first assignment of error without discussion.

[3] In his argument, plaintiff asserts that defendants told him that the gauze was part of the normal process of treatment. For reasons that we discuss later in this opinion, we conclude that there is not admissible evidence in the record to support that assertion.

The second operation failed to resolve plaintiff's problems, and defendants performed a third operation on September 22, 1994, that also failed to resolve plaintiff's condition. By then, plaintiff had become suspicious that his treatment was not proceeding normally. In July 1995, he made an appointment with a different podiatrist in order to get a second opinion. However, before he could keep the appointment, he was arrested on criminal charges, which ultimately resulted in his conviction and imprisonment. While he was incarcerated on those charges, plaintiff learned additional facts that led him to conclude that defendants' treatment had been negligent. He ultimately filed the complaint in this case on November 26, 1997. Defendants moved for summary judgment on the ground that plaintiff had not commenced the action within two years after he discovered or should have discovered his injury. ORS 12.110(4). The trial court granted the motion, and plaintiff appeals.

ORS 12.110(4) provides, in pertinent part:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered."

In addition, at the time of plaintiff's arrest and subsequent incarceration, *former* ORS 12.160(3) could operate to toll the running of limitations periods, including that of ORS 12.110(4). The statute provided for the tolling of a statute of limitations if, "at the time the cause of action accrues," the plaintiff was "[i]mprisoned on a criminal charge, or in execution under the sentence of a court for a term less than the person's natural life[.]" In 1997, the legislature repealed *former* ORS 12.160(3). However, the repeal gave persons who could have brought an action on the day before the effective date of the repeal one year from that date to file their claims. Or Laws 1997, ch 339, §§ 1-2. Plaintiff filed this action less than a year after the effective date of the repeal.

■    Plaintiff was incarcerated, either awaiting trial or under a sentence, from the time of his arrest until he filed that action. Thus, the effect of the above statutes is that plaintiff's action is timely if his cause of action accrued after

his arrest, but it is untimely if his cause of action accrued before then. Under ORS 12.110(4), plaintiff's cause of action accrued when he discovered or should have discovered his injury, and he had two years from that date to commence this action. If he did not discover, and should not, in the exercise of reasonable care, have discovered his injury before his arrest, *former* ORS 12.160(3), in conjunction with the savings provision in Oregon Laws 1997, chapter 339, section 2, extended that period until one year from the effective date of the repeal of *former* ORS 12.160(3). The issue in this appeal is whether the evidence in the summary judgment record, when considered in the light most favorable to plaintiff, permits a reasonable inference that he did not discover defendants' malpractice, and should not, in the exercise of reasonable care, have done so, before he was arrested and incarcerated.

In resolving the above issue, a discussion of the applicable case law is helpful. *Greene,* the decision that prompted the Supreme Court to remand this case to us, is the most recent discussion of the discovery rule under ORS 12.110(4). In *Greene,* the plaintiff suffered a perforated uterus and colon during an abortion procedure on July 26, 1995. She spent 11 days in the hospital recovering from those injuries. She also retained a lawyer to represent her in connection with the surgery. On August 22, the lawyer requested a copy of her medical records; the hospital provided them to the lawyer on November 10. On May 14, 1996, the lawyer wrote a demand letter to the hospital and the surgeon in which he described the plaintiff's injuries; there is no evidence that any expert had reviewed the records up to that time. In March 1997, the plaintiff retained a different lawyer, who had two physicians examine the records. In June 1997, one of the physicians gave his opinion that the surgeon's conduct was outside the applicable standard of care. The plaintiff filed her complaint on July 24, 1997, but was not able to serve the surgeon until November 14, which was therefore the effective date of the commencement of the action as to him. ORS 12.020. *Greene,* 335 Or at 118-20.

In discussing the issue of the timeliness of the plaintiff's action, the *Greene* court observed that it had previously held that the "injury" that the plaintiff must discover under

ORS 12.110(4) is a "legally cognizable harm" and that a legally cognizable harm consists of three elements: "(1) harm; (2) causation; and (3) tortious conduct." 335 Or at 120-21. In that case, there was no question that the plaintiff knew, soon after the surgery, that the surgeon's conduct had caused her harm. The issue was whether she knew or should have discovered that his conduct was tortious rather than being within the scope of the applicable standard of care. To meet that requirement, she did not need to have known, or have reason to know, the precise theory of recovery, only that the surgeon had acted tortiously. On the other hand, it was not necessarily sufficient that the plaintiff knew that she had suffered short-term adverse consequences from the surgery; short-term adverse effects of surgery are not unusual when medical treatment is intended to provide a long-term benefit. Depending on the surrounding circumstances, it is possible that an adverse outcome might lead a reasonably careful person to discover only the possibility of tortious conduct, not its existence. *Id*. at 124-27.

In light of that observation, the court then went on to say that, in the ordinary medical malpractice case, evidence that the plaintiff knows that a medical procedure has resulted in a distinct injury and that the defendant physician caused that distinct injury will establish either actual or imputed knowledge that the defendant acted tortiously. Thus, in *Greene* the plaintiff knew more than two years before she commenced her action against the surgeon that he had perforated her uterine wall and colon. Those injuries were not in the nature of temporary, adverse side effects from the surgery; rather, they constituted a distinct injury. Nothing about the abortion procedure or its side effects masked those distinct injuries, and there was no evidence that the surgeon downplayed either the fact or likely consequences of the perforations or otherwise made false or misleading statements to the plaintiff about the injury. Consequently, *Greene* is an example of an ordinary case of a distinct injury where the plaintiff knew, or should have known of, the tortious nature of her injury without the need for a medical opinion confirming that fact. 335 Or at 127-29. The court explained:

"[T]he facts that plaintiff knew regarding her injury did not induce mere suspicions that might have given rise to a duty

> to make an inquiry to confirm whether tortious conduct had occurred. The facts that plaintiff knew regarding her injury satisfied the standard in ORS 12.110(4) for discovery, actual or imputed, of tortious conduct."

*Id.* at 128-29. As a result, the statute of limitations foreclosed her claim.

In reaching its conclusion, the Supreme Court discussed several of its earlier cases, including *Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994), on which plaintiff relies on in this case. In *Gaston,* the plaintiff, a quadriplegic, received a spinal injection to treat muscle spasms in his lower body. As a result of the injection, he lost the remaining use of his left arm, his only functioning limb. The plaintiff noticed numbness and loss of function in his arm shortly after the injection, but his physician told him that it was temporary and that he would regain the use of his arm in six months to two years. Despite that reassurance, he did not regain use of his arm. The plaintiff filed his action against the physician over three and one-half years after the injection. *Id.* at 251. The Supreme Court held that whether the plaintiff should have discovered that his injury was the result of tortious conduct more than two years before he filed the case depended on whether "a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct[.]" That was an objective test that depended on "the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances." *Id.* at 256.

Among the "other relevant circumstances" that affect whether a reasonable person would be aware of a substantial possibility of tortious conduct, according to the *Gaston* court, is whether the attending physician made assurances that could mislead the patient. The court explained, "[i]f the physician makes a representation on which a plaintiff reasonably relies, it could have the effect of delaying a reasonable person from becoming aware of a substantial possibility of tortious conduct." *Id.* at 257. In *Gaston*, the court held on the above facts that there was a genuine issue of fact as to when the plaintiff should have discovered a

substantial possibility of tortious conduct and that that genuine issue of fact precluded summary judgment. The plaintiff's symptoms were not so clearly unrelated to the procedure that the defendant had performed that, as a matter of law, a reasonable person would have believed that the cause of the adverse effects was tortious conduct. *Id.* at 258.

The facts in *Gaston* are an example of a situation in which a plaintiff's knowledge of undesired results does not necessarily establish actual or imputed discovery of an injury for purposes of ORS 12.110(4). *Greene*, 335 Or at 125. The *Greene* court contrasted the facts in *Gaston* with the facts in *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966). In *Berry*, the plaintiff discovered that the defendant had left a needle in her body during surgery. That discovery began the running of the limitations period. *Greene*, 335 Or at 126. There was no suggestion in *Berry* that the defendant had made any representations after the needle was found regarding its presence in the plaintiff's body.

In this case, plaintiff knew on May 5, 1994, that defendants had left gauze in his foot during the first operation. That knowledge constitutes knowledge of a distinct injury, much like the knowledge of the perforated uterus and colon in *Greene* and of the needle in *Berry*. In the absence of some reason for plaintiff to believe that leaving gauze in his foot was a part of the course of treatment, plaintiff's knowledge of that fact constituted knowledge that he had suffered harm as a consequence of defendants' tortious conduct and triggered the running of the statute. It follows that his cause of action accrued as a matter of law on May 4, 1994, before his arrest.

Plaintiff's primary response to the uncontroverted evidence of his knowledge of the presence of the gauze in his foot on May 5, 1994, is his assertion that defendants told him that leaving the gauze in his foot was a part of the normal course and treatment for his condition. He argues that those statements, like the physician's statements in *Gaston*, constitute additional circumstances that create an issue of fact about when he should have discovered defendants' tortious conduct. The flaw in his argument is that there is no evidence in the summary judgment evidentiary record to support his

assertion that defendants made the alleged statements. *See* ORCP 47 C (summary judgment is to be based on "pleadings, depositions, affidavits and admissions on file"); ORCP 47 D (affidavits must be made on personal knowledge and set forth admissible evidence). Rather, the only references to them came in his arguments to the trial court, not in the evidence that he submitted.

Plaintiff submitted an affidavit in contravention of defendants' motion for summary judgment. In the initial part of the affidavit, plaintiff avers, in relevant part,

"3. The defendants constantly and continually reassured me that (a) the pain and swelling were all a natural part of the healing process of the hammertoe procedure and (b) the necessity for further corrective surgery in addition to the initial surgery of February 10th 1994.

"4. After removal of the gauze from my foot on May 5, 1994, the defendants did tell me they removed the gauze they left in my foot. They did not tell me that they negligently left it in there to begin with, or that it was unintentional or that this was not part of the hammertoe procedure, or not one of the additional operations."

No other part of his affidavit refers to any statements made to him by defendants. Rather, the remaining gist of his affidavit is that they left the gauze in his foot intentionally to justify the need for additional surgeries.[4] Consequently, there is no evidence in the summary judgment evidentiary record of any attempts by defendants to conceal their tortious conduct.

■ In summary, the claims about defendants' statements that plaintiff made in his arguments are not evidence. Plaintiff's own affidavit shows that he knew in May 1994 that he had suffered a legally cognizable harm resulting from defendants' treatment of him. That knowledge was sufficient to satisfy the "tortious conduct" element of an "injury" under ORS 12.110(4). It does not matter whether a plaintiff knows or should know that a defendant's conduct was intentional rather than negligent, so long as the plaintiff knows that the conduct was tortious. *Gaston*, 318 Or at 255 n 8, *quoted in Greene*, 335 Or at 124. Consequently, there is nothing in the

---

[4] Plaintiff appears to have abandoned that theory on appeal.

evidentiary record of this case that makes it different from the ordinary case in which there is a distinct injury. Plaintiff's cause of action accrued before his arrest and, as a result, his filing of this case was untimely under ORS 12.110(4). The trial court, therefore, correctly granted summary judgment to defendants.

Affirmed.