Argued and submitted April 6, affirmed August 11, 2004

Suzana VUCAK,
*Appellant,*

*v.*

CITY OF PORTLAND, OREGON,
a public body,
*Respondent.*

0207-06650; A121595

96 P3d 362

Gary J. Susak argued the cause and filed the briefs for appellant.

Harry Auerbach, Senior Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff brought this action against the City of Portland, alleging that a city employee's negligence caused her personal injury. The outcome of the case depends ultimately on whether plaintiff adequately disclosed her claim against the city when she filed for Chapter 7 bankruptcy. Concluding that she did not, the trial court granted the city's motion for summary judgment. Plaintiff appeals and we affirm.

To understand this case, one must first understand the somewhat attenuated connection between plaintiff's claim and the bankruptcy code—a connection the existence and mechanics of which the parties do not dispute. The following simplified description is adequate for purposes of the present appeal.

■■ A bankruptcy debtor must file a schedule of assets, including the debtor's present and potential causes of action in tort against a third party. 11 USC § 521;[1] *In re Coastal Plains, Inc.*, 179 F3d 197, 208 (5th Cir 1999), *cert den*, 528 US 1117 (2000); *William M. Collier, 4 Collier on Bankruptcy* ¶ 521.062[3][a] (Lawrence P. King ed., 15th ed 2002). If an asset is scheduled and the trustee does not dispose of it when the case is closed, then the asset is deemed "abandoned to the debtor," that is, it remains the property of the debtor. 11 USC § 554 (c).[2] If, on the other hand, an *un*scheduled asset is not disposed of, then it becomes the property of the bankruptcy estate. 11 USC § 554 (d).[3] In the present case, defendant maintains (and the trial court held) that plaintiff did not

---

[1] 11 USC § 521 (1) provides that the debtor shall

"file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs[.]"

[2] 11 USC § 554 (c) provides:

"Unless the court orders otherwise, any property scheduled under section 521 (1) of this title not otherwise administered at the time of the closing of a case, is abandoned to the debtor[.]"

[3] 11 USC § 554 (d) provides:

"Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains the property of the estate."

include her pending personal injury claim in her schedule of assets; therefore, when the trustee did not dispose of the claim, it became the property of the estate and not of plaintiff. As a result, plaintiff has no standing to pursue the claim, or, in the words of the trial court, "the claim against the City is property of the estate * * * [and] [p]laintiff is not the real party in interest." Plaintiff, on the other hand, maintains that, although her references to her claim against the city were indirect and imprecise, they were sufficient at least to raise a question as to whether the claim was "scheduled." Therefore, she maintains, when the bankruptcy was closed without disposing of the claim, it is at least arguable that the claim remained hers to litigate.

Because defendant prevailed on summary judgment, the question before us is whether the following undisputed facts, viewed in the light most favorable to plaintiff, raise a genuine issue as to whether she scheduled the claim. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 431 (2001). On October 5, 2000, plaintiff sustained personal injuries in an automobile accident involving a city employee. Four days later, she filed a notice of tort claim against the city.

Between filing her notice of tort claim and filing her complaint, plaintiff obtained a discharge of her debts under Chapter 7 of the United States Bankruptcy Code. The bankruptcy matter began in February 2001, when plaintiff filed a petition in the United States Bankruptcy Court for the Western District of Washington. That petition, prepared by a professional "Non-Attorney Petition Preparer," did not list her personal injury claim against the city in "Schedule B. Personal Property." In fact, where that schedule calls for disclosure of "Other contingent and unliquidated claims of every nature," she checked the column labeled "NONE." However, she did disclose on "Schedule I. Current Income of Individual Debtor(s)," that she was receiving $800 per month in "Farmers Insurance Disability Benefits." She also stated in her "Statement of Financial Affairs" that her

"[a]utomobile was totalled [*sic*] in traffic accident in 2000. Also received personal injury from collision. Insurance paid

$14,000 on balance left owing on car, and am currently receiving disability benefits from Farmers Insurance."

Before the first meeting of plaintiff's creditors, the trustee in bankruptcy reviewed her schedules. He was aware of her personal injury claim; although his affidavit in this case does not state that he inferred its existence from the schedules, it does state, "I believe that the petition and schedules filed by [plaintiff] adequately disclosed the existence of her personal injury claim." Ultimately, he concluded that the claim would be burdensome to administer and of little value to the estate, so he informed the court of his intent to abandon it to plaintiff without notice to creditors, that is, "by operation of law."[4]

The bankruptcy court then sent plaintiff's creditors a notice that the hearing on her case would occur on March 16, 2001. This notice informed them that "[t]here does not appear to be any property available to the trustee to pay creditors" and told them not to file any proofs of claim. No creditors appeared at the hearing, after which the court granted plaintiff a discharge of her debts. Nothing in the record indicates that creditors received a copy of plaintiff's petition.

Approximately 16 months later, plaintiff filed her tort claim against the city, seeking $26,591.54 in economic damages and $125,000 in noneconomic damages. The city moved for summary judgment, claiming that, because plaintiff did not include her claim against the city in her schedule of assets, it was not abandoned to her under section 554 (c); rather, it fell within the scope of section 554 (d) and became the property of the estate. The city also argued that, having failed to disclose the existence of her claim to the bankruptcy court, plaintiff was judicially estopped from subsequently asserting that claim in a different proceeding.

The court granted the city's motion for summary judgment without reaching the judicial estoppel argument.

---

[4] The bankruptcy code provides two procedures for abandonment of scheduled assets. The first requires the trustee to notify interested parties and allow them to file objections. 11 USC § 554 (a), (b). The second, 11 USC section 554 (c) (set out above), is known as "abandonment by operation of law" and occurs with no notice to creditors or other interested parties; scheduled assets that the trustee does not administer are simply deemed abandoned to the debtor.

In its letter opinion, the court concluded that the claim against the city was not "scheduled as an asset." The court explained:

> "The word 'scheduled' in Section 554 (c) has a very specific meaning. A claim for relief is not 'scheduled' if it is listed instead in a statement of financial affairs. Nor is the claim for relief 'scheduled' if the claim otherwise comes to the attention of the trustee."

(Citations omitted.) The court dismissed plaintiff's claim and this appeal followed.

Plaintiff maintains that the bankruptcy code requires only that the debtor provide enough information in the various parts of the petition to allow an interested person to determine whether or not to engage in further inquiry. She asserts that the disclosures made in Schedules B and I and the information provided in her statement of financial affairs, along with the trustee's actual knowledge of the claim, were sufficient to meet that standard. The city argues that the trustee's awareness of the claim is irrelevant and, because sections 554 and 521 (1) of the Bankruptcy Code give the term "schedule" a very precise meaning, the information provided by plaintiff in the documents themselves did not constitute proper scheduling of her claim.

■ The overwhelming majority of federal courts that have addressed the issue have held that, even when the trustee has actual knowledge of a claim and does not administer it, the claim is nonetheless not abandoned to the debtor unless it is formally "scheduled" pursuant to 11 USC section 521 (1). *See, e.g., Hamilton v. State Farm Fire & Cas. Co.*, 270 F3d 778, 784 (9th Cir 2001); *Jeffrey v. Desmond*, 70 F3d 183, 186 (1st Cir 1995); *Vreugdenhill v. Navistar Intern. Transp. Corp.*, 950 F2d 524, 526 (8th Cir 1991); *In re Kottmeier*, 240 BR 440, 443 n 3 (Bankr MD Florida 1999). Plaintiff offers no reason to depart from the weight of that authority and from the plain language of the statute. We therefore hold that the trustee's actual knowledge of plaintiff's claim did not excuse her from scheduling that claim in her petition. We must therefore determine whether the claim was, in fact, properly scheduled.

■ Debtors in bankruptcy have an affirmative duty "carefully, completely and accurately" to schedule assets and liabilities. *Cusano v. Klein*, 264 F3d 936, 946 (9th Cir 2001) (internal quotation marks and citations omitted). Debtors who fail, either through neglect or indifference, to recognize the requirements of section 521 (1), "as a significant and integral part of filing a bankruptcy petition under Chapter 7, do so at their own peril." *Matter of Bayless*, 78 BR 506, 509 (Bankr SD Ohio 1987). The purpose of the alternative requirements in section 554—either "a notice and a hearing" before a court-ordered abandonment or a "scheduling" of the claim before it can be abandoned as a matter of law—is to give creditors sufficient notice of the assets available to satisfy their claims against the bankruptcy estate. "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." *In re Coastal Plains, Inc.*, 179 F3d at 208.

■ The word "scheduled" in section 554 (c) has been given a specific meaning in section 521 (1) and refers only to assets listed in a debtor's schedules of assets and liabilities. *In re McCoy*, 139 BR 430, 431 (Bankr SD Ohio 1991). Although there are no " 'bright-line rules for how much itemization and specificity is required,' " a debtor is required to be "as particular as is reasonable under the circumstances." *Cusano*, 264 F3d at 946 (citing *In re Mohring*, 142 BR 389, 395 (Bankr ED Cal 1992)). A debtor can fail to schedule an asset by listing it in an incorrect location. *See, e.g., In re Fossey*, 119 BR 268, 272 (Bankr CD Utah 1990) (debtor listed cause of action in his Statement of Financial Affairs but not in his Schedules of Assets and Liabilities; cause of action was not scheduled under section 521 (1) and could not be abandoned); *In re Harris*, 32 BR 125, 127 (Bankr SD Florida 1983) (reference to partnership in statement of financial affairs not enough to schedule debtor's interest in mortgages held by partnership). Likewise, a debtor does not "schedule" a claim by referring to it in such a vague manner that creditors would be unable to discern the source of the claim. *See, e.g., Matter of Baudoin*, 981 F2d 736, 739 n 4 (5th Cir 1993) (vague reference to "any possible claim against creditor for actions taken against debtor prior to bankruptcy proceeding" in

schedule of assets insufficient scheduling for the purposes of abandonment). Nor is a claim deemed to be "scheduled" if it is included in the debtor's statement of financial affairs but not in the Schedules of Assets and Liabilities. *In re McCoy*, 139 BR at 432 "[T]he word 'scheduled' in 554 (c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities.").

In this case, if we consider only the information that plaintiff listed on her "schedules," we must conclude that she not only failed to list the claim on Schedule B of the petition (Personal Property); she also, on that same schedule, expressly marked "NONE" where the form asked her to disclose any "contingent and unliquidated claims." The only information pertaining to plaintiff's personal injury claim against the city in her schedules is in Schedule I, where plaintiff specified "Farmers Insurance Disability Benefits" as a form of "other monthly income." That information could not possibly put an interested party on notice that the events causing the disability might also form the basis of a potential personal injury claim.

If we were to accept a more liberal interpretation of "schedule," as plaintiff urges and contrary to *McCoy*, and consider the information contained in plaintiff's Statement of Financial Affairs, the information provided is still insufficient. Plaintiff's statement that she "received personal injury from collision," combined with her statement that she received $14,000 from her insurance company for "balance left owing on the car," that she receives disability benefits, and that she has no pending claims, indicate that, if anything, she had filed a claim and it had been resolved. We recognize that the trustee stated his "belief" that "the petition and schedules * * * adequately disclosed the existence of [plaintiff's] personal injury claim," and that, in reviewing a grant of summary judgment for defendant, we must view the facts in the light most favorable to plaintiff. The trustee's opinion, however, is not a fact but a legal conclusion, and it is not one with which we agree.

■ Because plaintiff's personal injury claim never was properly scheduled, it was not abandoned to her by the bankruptcy trustee. Plaintiff was therefore not the real party in

interest and the trial court did not err in granting city's motion for summary judgment.[5]

Affirmed.

---

[5] Plaintiff also argues that the court erred in concluding that her personal injury claim was barred by principles of judicial estoppel. As we have determined that plaintiff is not the real party in interest in the personal injury action, it is unnecessary for us to address that argument.