Argued and submitted October 22, 2018, judgment vacated and remanded with instructions to dismiss the complaint for lack of standing September 18, 2019, petition for review denied January 30, 2020 (366 Or 135)

Robert CONCIENNE,
*Plaintiff-Appellant,*

*v.*

ASANTE,
dba Rogue Valley Medical Center,
and Ruth Rabinovitch, M.D.,
*Defendants,*
*and*

Tracey Stephen KATHER, N.P.,
*Defendant-Respondent.*

Jackson County Circuit Court
123280L3; A162899

450 P3d 533

In this medical malpractice case, plaintiff alleged that defendant, a nurse practitioner, misdiagnosed plaintiff, resulting in his subsequent hospitalization and surgery. After the facts underlying the medical malpractice action occurred, but before the suit was brought, plaintiff concluded a Chapter 7 bankruptcy case in which plaintiff's debts were discharged. During the bankruptcy case, plaintiff was required to disclose all assets, including civil claims against third parties. Plaintiff did not disclose his potential medical malpractice cause of action to the bankruptcy court. Based on plaintiff's failure to disclose the claim as an asset, defendant moved for summary judgment, citing the doctrine of judicial estoppel. The trial court granted defendant's motion. On appeal, the issue is whether plaintiff's bankruptcy estate is the owner of plaintiff's medical malpractice claim because plaintiff was, or reasonably should have been, aware of the potential claim when he failed to list it as an asset in the earlier Chapter 7 bankruptcy proceeding. *Held*: The trial court erred by failing to dismiss plaintiff's complaint for lack of standing. As a matter of law, plaintiff was, or reasonably should have been, aware of the claim when he failed to disclose it to the bankruptcy court. Therefore, the bankruptcy estate owned and controlled the claim. As a result, the bankruptcy trustee was the real party in interest, and plaintiff lacked standing to bring the claim.

Judgment vacated and remanded with instructions to dismiss the complaint for lack of standing.

Ronald D. Grensky, Judge.

Kevin L. Cathcart argued the cause and filed the briefs for appellant.

Janet M. Schroer argued the cause for respondent. Also on the brief were Ruth C. Rocker and Hart Wagner LLP.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Judgment vacated and remanded with instructions to dismiss the complaint for lack of standing.

**SHORR, J.**

The issue in this case is whether plaintiff's bankruptcy estate is the owner of plaintiff's medical malpractice claim because plaintiff was or reasonably should have been aware of the potential claim when he failed to list it as an asset in an earlier Chapter 7 bankruptcy proceeding. As discussed below, we conclude that, as a matter of law, plaintiff was or reasonably should have been aware of the claim when he failed to list it with the bankruptcy court and, therefore, the bankruptcy estate owns and controls the claim.

Plaintiff alleges that defendant Kather, a nurse practitioner, failed to diagnose plaintiff with acute respiratory failure secondary to pneumocystis jiroveci pneumonia (PCP), which is an illness caused by AIDS. Plaintiff alleges that that failure resulted in plaintiff's hospitalization and the removal of his colon. Nearly one year after that hospitalization, plaintiff concluded a Chapter 7 bankruptcy case in which the court determined that plaintiff had no assets and, therefore, discharged his debts. Plaintiff did not disclose the potential malpractice claim as an asset during that proceeding. Plaintiff later filed this action. Kather, citing the doctrine of judicial estoppel, moved for summary judgment on the ground that plaintiff's attempt to bring this malpractice case was inconsistent with his position in the bankruptcy case that he had no assets—including any claims against third parties. Kather also raised the alternative argument that plaintiff was not the party in interest—and therefore lacked standing—because plaintiff's claim was an unscheduled asset that belonged to his bankruptcy estate. The trial court concluded that judicial estoppel applied and granted defendant's motion, and plaintiff appeals. For the reasons explained below, we conclude that plaintiff lacked standing to bring the claim. Accordingly, we vacate the judgment in Kather's favor and remand for the trial court to dismiss plaintiff's complaint for lack of standing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

We begin with a factual background of plaintiff's bankruptcy case and subsequent medical malpractice lawsuit.

The relevant facts that underlie the issue of standing are undisputed.

A.  *Plaintiff initiated a Chapter 13 bankruptcy case.*

On January 8, 2009, plaintiff filed a petition for bankruptcy in the United States Bankruptcy Court in the District of Oregon. Because he was able to earn income at the time, the bankruptcy court deemed him eligible for Chapter 13 status and established a bankruptcy plan for repayment of his debts.

B.  *Plaintiff's Relevant Medical History*

Between January and June 2010, plaintiff was having trouble breathing and sought medical care from Kather, a nurse practitioner. Kather diagnosed plaintiff with reactive airway disease (RAD) and provided plaintiff with an inhaler to help manage his symptoms. On July 8, 2010, plaintiff began to have great difficulty breathing and was admitted to the emergency department at Rogue Valley Medical Center (RVMC), where doctors determined plaintiff's breathing difficulties and other symptoms were PCP— not RAD—resulting from plaintiff being positive with HIV and having AIDS. Prior to that diagnosis, plaintiff was unaware that he was HIV positive, let alone that the disease had progressed to such an advanced stage. After he was admitted to the intensive care ward at RVMC, plaintiff developed a severe infection in his colon, requiring a complete colectomy on July 25, 2010.

C.  *Plaintiff converted his Chapter 13 to a Chapter 7 bankruptcy case and received a "no asset" discharge of his debts.*

Approximately six months after plaintiff's AIDS diagnosis, hospitalization, and colectomy, plaintiff was no longer able to make the payments required by his Chapter 13 bankruptcy and converted his bankruptcy case to Chapter 7 on January 26, 2011. In converting from a Chapter 13 to a Chapter 7, plaintiff was required to file a list of creditors holding unsecured claims as of the date of conversion, including creditors associated with plaintiff's medical care

that he received in relation to his AIDS diagnosis, hospital-
ization, and surgery. Plaintiff had accrued nearly $80,000
in debt at that point, over $70,000 of which was attributable
to AIDS-related medical services largely arising out of his
prior hospitalization.

As part of the Chapter 7 conversion, plaintiff was
also required to submit to the bankruptcy court a list, or
"schedule," of assets as required by the Bankruptcy Code, 11
USC § 521, that plaintiff possessed as of that date. Plaintiff's
schedule of assets required him to disclose, among other
things, "other contingent and unliquidated claims of every
nature," and an estimated value of each. Plaintiff marked in
his schedule that he had "none."

On May 12, 2011, the bankruptcy court discharged
plaintiff's debt accrued as a result of his medical services
related to his AIDS diagnosis.[1] The court's order of dis-
charge identified plaintiff's petition as a "no asset" case, as
the court was under the impression that plaintiff possessed
no property that could be disposed of for the benefit of his
creditors.

D.  *Plaintiff filed his medical malpractice case against
    Kather.*

On December 21, 2012, nearly 18 months after the
close of plaintiff's bankruptcy case, plaintiff filed his first
amended complaint against Kather, alleging professional
negligence and seeking $3,000,000 in economic and noneco-
nomic damages. Specifically, plaintiff's complaint alleged
that Kather was negligent "in one or more of the following
particulars":

    "(a)  In failing to diagnose plaintiff's respiratory fail-
    ure secondary to pneumocystis jiroveci pneumonia (PCP)
    when he knew or should have known that plaintiff was
    H.I.V. positive and had A.I.D.S.,

---

[1] A bankruptcy discharge "'releases the debtor from personal liability for
[his or] her pre-bankruptcy debts.' A discharge 'is the legal embodiment of the
idea of the fresh start; it is the barrier that keeps the creditors of old from reach-
ing wages and other income of the new.'" *Sherwood Park Business Center, LLC v.
Taggart*, 267 Or App 217, 227, 341 P3d 96 (2014) (quoting *In re Ybarra*, 424 F3d
1018, 1022 (9th Cir 2005) (internal citations omitted)).

> "(b)   In failing to recommend that plaintiff be tested for H.I.V., when he knew or should have known that plaintiff's medical history put him at risk for being H.I.V. positive[,]
>
> "(c)   In failing to refer plaintiff to a medical doctor when it was apparent that plaintiff was not responding to the prescribed treatment for RAD/Asthmatic Bronchitis, and
>
> "(d)   In failing to confer with a medical doctor in regard to plaintiff's breathing problems when it was apparent that plaintiff was not responding to the prescribed treatment for RAD/Asthmatic Bronchitis."

Plaintiff further alleged that, as a result of the negligence, plaintiff was hospitalized for two months, lost his colon, and suffered corresponding damages.

During his deposition on May 12, 2016, plaintiff testified that he "rather quickly" blamed Kather for the allegedly negligent care that he had provided. When Kather's attorney asked plaintiff whether he "had decided within a couple of months after [his] discharge from the hospital that [defendant] had made mistakes," plaintiff replied, "I would have to say yes." Plaintiff then explained that, at first, he was in "shock" and "totally confused" about the sudden change wrought by his hospitalization and surgery in July 2010, but, when he "started really thinking about everything," he "made the decision to file a lawsuit." During that period—within a couple of months after his discharge from the hospital—plaintiff felt "that both [Kather], and also the hospital, were negligent." Plaintiff "didn't rush" to file a lawsuit, however, because he knew it would "affect [Kather's] life[.]"

Later, on July 4, 2016, plaintiff submitted a declaration in which he asserted that he had not disclosed the claim against defendant during his Chapter 7 bankruptcy proceeding because, at that point, he "hadn't hired an attorney to investigate or pursue any claims" and he "really didn't think that it would come to [him] bringing litigation against defendant." Plaintiff further explained that he had been reluctant to bring a lawsuit because he was not "sue happy" and "wasn't really sure if [Kather] did anything wrong initially[.]"

Plaintiff proceeded to describe the circumstances leading to his decision to file his claim against Kather. In January 2011, around the time that plaintiff converted to a Chapter 7 bankruptcy and averred that he had no claims against third parties, plaintiff moved to Palm Springs, California. In the "months after" he moved, plaintiff "met and spoke with other individuals in the community who had survived AIDS" who expressed surprise that plaintiff's condition had become so serious. In September of that year, plaintiff moved in with his partner, an attorney, who "expressed concern" that plaintiff "may have a potential medical malpractice claim against [his] providers." Plaintiff had already retrieved his medical records in June 2011 to establish care with new providers in Palm Springs, and, in October of that year, he began to send those records to medical malpractice attorneys for evaluation to initiate the claim at issue here. Plaintiff filed his complaint in July 2012 and filed his amended complaint in December of that year.

Kather moved for summary judgment. As noted, his primary argument was that plaintiff was judicially estopped from bringing his claim because he had failed to list the claim as an asset when he converted to Chapter 7 bankruptcy. Plaintiff responded that he had not been obligated to list the claim at that time because he did not "discover" the claim until after his bankruptcy case had closed. In the alternative, Kather argued that plaintiff lacked standing to bring his negligence claim because the claim was, in fact, property of his bankruptcy estate and the bankruptcy trustee was the only party in interest. Plaintiff did not respond to Kather's standing argument at that time.

The trial court agreed with Kather that plaintiff was judicially estopped from bringing his claim and granted summary judgment. The court did not resolve Kather's standing argument. On appeal, plaintiff again argues that he neither knew nor should have known that he had a viable medical malpractice claim against Kather at any point during his bankruptcy case. Plaintiff's position, effectively, is that the statute of limitations had not yet started to run on his claim during his bankruptcy case, and, because there is no reason why the standard for when a claim must be

scheduled should be different from the standard for when the statute of limitations begins to run, he was not required to schedule the claim as an asset. As a result, plaintiff argues, judicial estoppel is not appropriate in this case. Kather, in his response, primarily argues that judicial estoppel is warranted but also contends that we should affirm the trial court's ruling on the alternative basis that plaintiff lacked standing to bring his claim.

## II.  ANALYSIS

As explained, the trial court granted defendant's motion for summary judgment based on its conclusion that plaintiff was judicially estopped from bringing the medical malpractice claim. On appeal, the parties primarily focus on whether that ruling constituted legal error. But Kather also reiterates his alternative argument that plaintiff lacked standing to bring his claim. As a general rule, when a party raises an alternative argument for affirmance on appeal, we consider whether it would be appropriate to affirm on that basis using the framework described by *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). However, we need not apply that framework when a party on appeal challenges the trial court's jurisdiction to entertain the plaintiff's action, as we have an "independent obligation to consider jurisdictional issues," including standing, even where the parties "have failed to fully explore the issue" or, as in this case, the trial court ruled on a different basis. *Alto v. City of Cannon Beach*, 247 Or App 641, 648, 270 P3d 392 (2012). Thus, we may consider the threshold question of plaintiff's standing in this case without employing the *Outdoor Media Dimensions Inc.*, framework, because, if plaintiff was without standing to bring the malpractice claim, then the trial court lacked the authority to enter a judgment resolving the claim for either party. *See Dept. of Human Services v. B. M. C.*, 272 Or App 255, 262, 355 P3d 190 (2015) ("Because [the petitioner] lacked standing to bring its motion *** the trial court had no jurisdiction to enter an order granting that motion.").

Standing "is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication

of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). Put differently, standing refers to "'the right to obtain an adjudication.'" *Fenimore v. Blachly-Lane County C.E.A.*, 297 Or App 47, 51, 441 P3d 699 (2019) (quoting *Eckles v. State of Oregon*, 306 Or 380, 383, 760 P3d 846 (1988)). To say that a plaintiff has no standing is to say that he or she "'has no right to have a tribunal decide a claim,'" whether or not another plaintiff has any such right. *7455 Incorporated v. Tuala Northwest, LLC*, 274 Or App 833, 839, 362 P3d 1179 (2015) (quoting *Eckles*, 306 Or at 383). "Parties have standing to assert only their own legal rights and cannot rest their claims upon the legal rights of third parties." *Id.* at 838 (internal quotation marks omitted). It follows that a party who is not the "real party in interest" to a claim necessarily lacks standing to seek resolution of the claim in our courts. *Dischinger Orthodontics v. Regence BlueCross BlueShield*, 288 Or App 297, 299, 405 P3d 164 (2017) (concluding that the trial court properly dismissed the plaintiffs' claims because they were not the real parties in interest and lacked standing); *Vucak v. City of Portland*, 194 Or App 564, 571-72, 96 P3d 362 (2004) (concluding that the bankruptcy estate and not the plaintiff "was the real party in interest").

As we discuss below, we conclude that plaintiff in this case lacked standing to pursue the medical malpractice claim, because the claim belonged to his bankruptcy estate and the bankruptcy trustee was the real party in interest. To explain our decision, we first provide an overview of the relevant aspects of bankruptcy law. We then explain why, in light of that law, plaintiff did not have the right to personally seek an adjudication of the claim from the trial court because that right belongs to the bankruptcy estate's trustee.

A.   *Relevant Bankruptcy Law*

Bankruptcy proceedings are governed by the federal Bankruptcy Code. 11 USC §§ 101 to 1532. As the Ninth Circuit Court of Appeals has explained,

"the Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including the exercise of exclusive jurisdiction over all of the debtor's property, the

equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a fresh start by releasing him, her, or it from further liability for old debts."

*In re Deitz*, 760 F3d 1038, 1046 (9th Cir 2014) (internal citations and brackets omitted).

When a debtor files a bankruptcy petition, an estate is created comprised of the debtor's nonexempt property as defined under section 541 of the Bankruptcy Code. 11 USC § 541(a). To facilitate the disposition of assets by the estate for the benefit of the bankruptcy creditors, the debtor must file a "schedule of assets" with the bankruptcy court. *Id.* § 521(a)(1)(B). A bankruptcy debtor has "an affirmative duty 'carefully, completely and accurately' to schedule assets." *Vucak*, 194 Or App at 570 (quoting *Cusano v. Klein*, 264 F3d 936, 946 (9th Cir 2001)). Full disclosure of assets—even assets that potentially might not be property of the estate—is important because "the concept of 'property of the estate' is a fact-based legal conclusion to be decided by the court." *In re JZ LLC*, 371 BR 412, 417 (BAP 9th Cir 2007).

Federal law determines what types of property must be scheduled under section 541, while state law creates and defines the nature of the property interest. *Butner v. United States*, 440 US 48, 54-55, 99 S Ct 914, 59 L Ed 2d 136 (1979). The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC § 541(a)(1). That includes claims against third parties that the debtor possessed as of the petition date. *Cusano*, 264 F3d at 945 (explaining that assets of the estate include a debtor's causes of action). A "claim" is broadly defined and includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 USC § 101(5).

The trustee of the bankruptcy estate administers the estate to satisfy claims made by creditors against it. *Id.* § 323. To that end, a debtor must schedule his or her assets so that creditors have "sufficient notice of the assets available to satisfy their claims." *Vucak*, 194 Or App at 570.

If the trustee who represents the estate does not dispose of a scheduled asset when the bankruptcy case is closed, that asset is deemed "abandoned by the trustee" and returned to the debtor. *Caplener v. U.S. National Bank*, 317 Or 506, 517, 857 P2d 830 (1993) (citing 11 USC § 554(c)).[2]

But a debtor's nonexempt property belongs to the estate whether or not it is scheduled. Indeed, if the trustee does not dispose of an *un*scheduled asset by the close of the case, that asset remains the property of the bankruptcy estate and does not revert to the debtor unless the trustee later abandons the asset. 11 USC § 554(d);[3] *see Vucak*, 194 Or App at 571 ("Because plaintiff's personal injury claim never was properly scheduled, it was not abandoned to her by the bankruptcy trustee.").

As to legal claims that a debtor might have against third parties that are property of the estate, the bankruptcy trustee is the real party in interest to the exclusion of the debtor and has standing to pursue those claims or is entitled to abandon them. *Vucak*, 194 Or App at 571-72; *see Padrick v. Lyons*, 277 Or App 455, 465, 485, 372 P3d 528, *rev den*, 360 Or 26 (2016) ("[The] bankruptcy trustee stands in [the] shoes of the bankrupt party in asserting claims owned by [the] debtor." (Citing *Ahcom, Ltd. v. Smeding*, 623 F3d 1248, 1250 (9th Cir 2010).)). Unless and until a claim is abandoned by the trustee, the debtor lacks standing to pursue the claim him- or herself even after the close of the bankruptcy case. *See Vucak*, 194 Or App at 571-72; *Kane v. National Union Fire Ins. Co.*, 535 F3d 380, 385 (5th Cir 2008) ("[A] trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.").

---

[2]  11 USC section 554(c) provides:

"Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case, is abandoned to the debtor."

[3]  11 USC section 554(d) provides:

"Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

B.  *Standing*

Before we explain why plaintiff lacked standing to pursue the medical malpractice claim, we first must address the two primary arguments raised by plaintiff for why we should not consider defendant's standing argument, both of which we reject.[4]

1.  *The Court of Appeals has an independent obligation to consider standing.*

Plaintiff's first argument is that we should not consider whether he had standing because the trial court did not decide that issue. However, as noted, we have an independent obligation to consider jurisdictional issues, including standing. *Alto*, 247 Or App at 648. Because standing entails whether the plaintiff has a right to have his or her claim adjudicated by the trial court, *Kellas*, 341 Or at 476-77, and a plaintiff with no standing "has no right to have [the court] decide [his or her] claim," *Eckles*, 306 Or at 383, we must decide that question regardless of whether the trial court reached it.

2.  *The medical malpractice claim accrued prior to plaintiff's bankruptcy case; therefore, the claim is the property of plaintiff's bankruptcy estate.*

Plaintiff's second challenge to defendant's standing argument speaks to whether plaintiff personally had the right to have the trial court adjudicate the medical malpractice claim. Plaintiff contends that the claim belongs to him rather than the bankruptcy estate because, at the time of his bankruptcy case, the claim had not accrued. Specifically, plaintiff argues that he did not have "sufficient knowledge to discover the claim *** for statute of limitations purposes," and "he shouldn't be held to a higher standard for disclosing

---

[4] Plaintiff also makes the single-sentence argument that he has standing due to an exemption in the Bankruptcy Code under 11 USC section 522(d)(11)(D), which provides for a limited right to receive a payment on account of personal bodily injury. We decline to address that undeveloped argument. *Bazzaz v. Howe*, 262 Or App 519, 529, 325 P3d 775, *rev den*, 356 Or 397 (2014) ("[B]ecause plaintiff's argument is undeveloped, we decline to address it."); *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193 (2003) (explaining that it is not our function to "to make or develop a party's argument when that party has not endeavored to do so itself").

[the claim] in bankruptcy proceedings." As we understand it, plaintiff's argument is that an Oregon bankruptcy debtor's negligence claim is property of the estate only if the statute of limitations has started to run on the claim prior to the bankruptcy case.

Plaintiff is correct to the extent that, under Oregon law, a plaintiff must have the requisite knowledge to discover a negligence claim before it accrues, *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002), and, as a general rule, "a debtor has no duty to schedule a cause of action that did not accrue" under the applicable state law prior to bankruptcy, *Cusano*, 264 F3d at 947.[5] However, plaintiff is not correct that his claim had not yet accrued when he filed for Chapter 7 bankruptcy. As explained below, the record demonstrates that, as a matter of law, plaintiff either had discovered, or in the exercise of reasonable care should have discovered, his claim against Kather before he filed for Chapter 7 bankruptcy.

In Oregon, "a medical malpractice action accrues 'when the injury is first discovered or in the exercise of reasonable care should have been discovered.'" *Kastle v. Salem Hospital*, 284 Or App 342, 347, 392 P3d 374 (2017) (quoting ORS 12.110(4)). Under ORS 12.110(4), an "injury" "consists of harm, causation, and tortious conduct." *Id.* (citing *Gaston v. Parsons*, 318 Or 247, 255, 864 P2d 1219 (1994)). Therefore,

> "a medical malpractice claim accrues, and the statute of limitations begins to run, when the plaintiff knows or, in the exercise of reasonable care, should have known facts which would make a reasonable person aware of a substantial possibility that (1) plaintiff suffered harm, (2) the harm was caused by the defendant's acts, and (3) the defendant's acts were tortious."

---

[5] The court in *Cusano* goes on to explain, without further clarification, that accrual in the bankruptcy context can be distinguished from "principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding." 264 F3d at 947 (citing *In re Swift*, 129 F3d 792, 796 (5th Cir 1997)). However, in light of the fact that federal courts look to state law to determine whether a claim has accrued in a bankruptcy proceeding, and, as explained below, in Oregon accrual and discovery are inextricably intertwined with respect to negligence claims, we do not see any way to determine whether the claim in this case had "accrued" in the context of the bankruptcy case without application of the discovery rule that applies under Oregon law to plaintiff's claim.

*Id.* (citing *Gaston*, 318 Or at 255). In short, discovery and accrual are inextricably linked with respect to medical malpractice claims, and a claim cannot accrue before a plaintiff discovers it or discovery can be imputed to the plaintiff.

Application of the discovery rule is "a factual issue for the jury unless the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T. R. v. Boy Scouts of America*, 344 Or 282, 296, 181 P3d 758, *cert den*, 555 US 825 (2008). A plaintiff's "mere suspicion" that a tortious injury has occurred is "insufficient to commence the period of limitations." *Greene*, 335 Or at 124 (citing *Gaston*, 318 Or at 256). But "it is not necessary that a plaintiff know 'to certainty' the precise nature of [a] claim" before it can be deemed that the plaintiff has discovered it, *i.e.*, that the plaintiff knew or should have known the critical facts that gave rise to the claim. *Holdner v. Oregon Trout, Inc.*, 173 Or App 344, 352, 22 P3d 244 (2001) (citing *Gaston*, 318 Or at 255). Nor must a plaintiff "know the full extent of the harm" or know that the critical facts of which they are aware have any specific "legal significance." *Smith v. OHSU Hospital and Clinic*, 272 Or App 473, 481, 356 P3d 142 (2015); *see Laird v. Stroot*, 188 Or App 118, 123, 71 P3d 105 (2003) (explaining that, to meet the "knew or should have known" element of the discovery rule, the plaintiff "did not need to have known, or have reason to know, the precise theory of recovery, only that the [defendant] had acted tortuously"). Rather, discovery of a claim is imputed to a plaintiff who has been injured by another when the plaintiff becomes aware that there is a substantial possibility that a "legally protected interest to be free from physical harm at the hands of another ha[s] been infringed." *Greene*, 335 Or at 124.

In this case, we conclude that no reasonable factfinder could find that the medical malpractice claim against Kather accrued later than the filing of plaintiff's Chapter 7 bankruptcy petition. Plaintiff alleged in his complaint that he was injured when he was hospitalized and forced to undergo an avoidable surgery due to mistakes made by Kather during his treatment of plaintiff. According to plaintiff's own deposition testimony, he "rather quickly" blamed

Kather and decided "within a couple of months" after he was hospitalized and underwent a complete colectomy that Kather had "made mistakes" during the course of plaintiff's care that had resulted in his hospitalization and necessitated that life-altering surgery. During that same time period, plaintiff had decided that Kather was negligent. According to plaintiff's testimony, plaintiff "didn't rush" to file a lawsuit—and initially did not think it was "likely" that he would file a lawsuit—not because he was unaware of the fact that he had been injured or even the possibility that Kather was at least partially responsible for those injuries but because he knew that a lawsuit would "affect" Kather's life. Similarly, in a later declaration, plaintiff explained that he had waited to file a lawsuit against Kather for personal reasons—that he "liked [Kather] as a person," and it was not in his nature "to be sue happy and cause problems for [Kather]."

Under the foregoing circumstances, plaintiff's argument that he did not know that there was a substantial possibility that Kather's conduct had been tortious until after plaintiff's Chapter 7 bankruptcy case, which plaintiff initiated over six months after his surgery, cannot succeed as a matter of law. Plaintiff was aware, well before his bankruptcy case, of the harm he had suffered—a hospitalization and surgery—and his testimony demonstrates that he believed that Kather's care had been negligent and contributed to that harm. Put differently, plaintiff had more than a "mere suspicion" that Kather had inflicted a tortious injury on him; indeed, he "rather quickly" blamed Kather for that injury and decided "within a couple of months" after he was discharged that Kather had "made mistakes."

Unlike some medical malpractice cases, plaintiff's case against Kather does not turn on whether mistakes were made during his hospitalization and surgery that caused plaintiff harm of which he might reasonably have been unaware until a later date. *Cf. Kastle*, 284 Or App at 354 (explaining that "'a reasonable person [who] experiences symptoms that are incidental to a particular medical procedure may not be aware that he or she has been a victim of tortious conduct'" until a later date (quoting *Gaston*,

318 Or at 256-57)). Instead, plaintiff's complaint alleges that Kather's conduct—specifically, his misdiagnosis and treatment for RAD rather than PCP—was harmful and tortious because it necessitated plaintiff's hospitalization and the removal of his colon. There is no dispute that plaintiff was aware of those critical facts before his Chapter 7 bankruptcy and blamed Kather for the outcome. Plaintiff was aware of the harm, blamed Kather for it, and ascribed the harm to Kather's mistake. *See Kastle*, 284 Or App at 347-48 (describing elements for accrual of a medical malpractice claim as reasonable knowledge of harm, causation, and tortious conduct).

Finally, plaintiff in his declaration explained that he denied having any claims during his Chapter 7 bankruptcy case because he "hadn't hired an attorney to investigate or pursue any claims," he did not have "any lawsuits pending," and he "didn't think it would come to [him] bringing litigation against [Kather]." As explained, discovery of a claim can be imputed to a plaintiff who does not yet understand the legal significance of the facts giving rise to the claim so long as he or she is aware of those facts or should be aware of them in the exercise of reasonable care. *Smith*, 272 Or App at 481 (explaining that, when a plaintiff argues that the statute of limitations on a negligence claim had not begun to run as of a particular date, "'an argument that the plaintiff did not know the full extent of the harm or that those facts [known to the plaintiff] had legal significance will be of no avail'" (quoting *Doe v. Lake Oswego School District*, 353 Or 321, 335, 297 P3d 1287 (2013))). Plaintiff knew in the months before he filed for Chapter 7 bankruptcy substantially all of the critical facts underpinning his medical malpractice claim against Kather—including that Kather had misdiagnosed plaintiff and erroneously treated him on the basis of that misdiagnosis for several months. In short, the fact that plaintiff did not know the precise legal significance of those facts because he had not consulted with an attorney does not affect our conclusion that plaintiff discovered the claim before his Chapter 7 bankruptcy case.

To summarize, we conclude that, as a matter of law, plaintiff discovered the medical malpractice claim against

Kather prior to filing his Chapter 7 bankruptcy petition.[6] *Cf. Laird*, 188 Or App at 125 (explaining that, when the plaintiff learned that the defendant-doctor had left gauze in the plaintiff's foot following an operation and did not have reason to believe that leaving the gauze in his foot was part of the course of treatment, the plaintiff's knowledge of those facts "constituted knowledge that he had suffered harm as a consequence of defendants' tortious conduct and triggered the running of the statute [of limitations]"). Accordingly, we conclude that the medical malpractice claim against Kather accrued prior to plaintiff's Chapter 7 bankruptcy case, and we reject plaintiff's argument to the contrary. Because the claim accrued prior to plaintiff's Chapter 7 bankruptcy case and plaintiff failed to include it on his schedule of assets when he completed his bankruptcy petition, the claim was and remains the unabandoned property of plaintiff's bankruptcy estate. *Cusano*, 264 F3d at 945-46 ("If [the debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [the debtor].").

3. *Plaintiff does not have standing to bring the medical malpractice claim.*

We turn to whether plaintiff had standing to pursue the medical malpractice claim notwithstanding that, because the claim had accrued prior to his Chapter 7 bankruptcy petition, it was and remains the unabandoned property of the estate.[7] Because the estate owns the claim, the bankruptcy trustee has stepped into plaintiff's shoes and has standing to pursue the claim or may abandon it. *Ahcom, Ltd.*, 623 F3d at 1250 (explaining that the trustee "stands in the shoes of the [debtor] and has standing to bring any suit that the [debtor] could have instituted had [he or she] not

---

[6] We do not decide if or when the statute of limitations has fully run on plaintiff's medical malpractice claim. As explained below, the claim is an unabandoned asset that belongs to plaintiff's bankruptcy estate, and our decision here does not determine whether the claim would be timely if brought by the bankruptcy trustee or abandoned by the trustee and brought by plaintiff at some future date.

[7] There is no evidence in the record that the trustee has abandoned the claim, and plaintiff does not argue otherwise. Indeed, plaintiff offered in the trial court that he would be willing to reopen the bankruptcy case to allow the trustee to pursue the claim, but the court granted defendant's motion for summary judgment on other grounds.

petitioned for bankruptcy" (internal quotation marks omitted)). Plaintiff has no independent authority to personally bring the claim unless it is abandoned to him by the trustee. *Vucak*, 194 Or App at 571-72. In other words, plaintiff does not have an independent "right to obtain an adjudication" or to personally "have a tribunal decide the claim," because that right resides exclusively with the bankruptcy trustee by operation of the Bankruptcy Code. *See Eckles*, 306 Or at 383 (stating standing requirements). It necessarily follows that plaintiff is not the "real party in interest," and the trial court should have dismissed the complaint for lack of standing.[8] *See Vucak*, 194 Or App at 571-72 (explaining that the plaintiff was not the "real party in interest" and lacked standing where the bankruptcy estate owned the claim).

Judgment vacated and remanded with instructions to dismiss the complaint for lack of standing.

---

[8] Based on our disposition, we do not address whether plaintiff's claim was barred by principles of judicial estoppel. *Cf. Vucak*, 194 Or App at 572 n 5 ("As we have determined that plaintiff is not the real party in interest in the personal injury action, it is unnecessary for us to address [the defendant's judicial estoppel] argument.").